# AUSTRO-HUNGARIAN CONSUL v. G. A. WESTPHAL.[1]

December 27, 1912.

Nos. 17,817—(161).

**Construction of revision of 1905.**

In construing the provisions of the Revised Laws of 1905, the court may look to the history thereof as one of the guides to their interpretation; and, in the absence of a clear intention to change it, the law as therein written will be deemed to be the same as it was prior to the revision.

**Will of alien — notice to foreign consul.**

Applying this rule, where an application is made for administration upon the intestate estate of a foreigner dying in this state, the notice provided for by R. L. 1905, § 3642, should be given.

[1] Reported in 139 N. W. 300.

Note.—The authorities on the jurisdiction and power of consuls to administer on estates are collated in notes in 45 L.R.A. 496 and 37 L.R.A.(N.S.) 549.

As to what assets will give jurisdiction to appoint administrator, see note in 24 L.R.A. 684.

**Right to appointment of administrator.**

Under R. L. 1905, § 3696, a foreign consul, who resides in this state and who has filed a copy of his appointment with the secretary of state, is, next after the surviving spouse or next of kin, entitled to be appointed administrator of the estate of one of his deceased nationals dying in this state, or to nominate the person to be appointed, provided that he be suitable and competent to discharge the trust, and that he apply for administration within 30 days after receiving the notice provided for by section 3642; but otherwise the statute gives him no preference whatever.

**Same — quære.**

Quære: Whether the "most favored nation clause" in a treaty between the United States and a foreign nation carries the benefit of a provision of a consular convention between the United States and another country, conferring upon the representatives of the parties thereto the right to administer upon the estates of their deceased nationals.

**Same — treaty with Sweden — subject to state statutes.**

Article 14 of the treaty between the United States and Sweden, proclaimed March 20, 1911, purports to give to the consuls of the parties thereto the right to administer upon the estates of their deceased nationals only "so far as the laws of each country will permit;" and hence any right thereby conferred upon a foreign consul, under the "favored nation clause," with respect to the administration of the estate of one of his deceased nationals dying in Minnesota, is expressly subject to the conditions imposed by the laws of this state.

**Same — next of kin.**

A foreign consul cannot, as such, assert the priority of right of administration conferred, by R. L. 1905, § 3696, subd. 1, upon the surviving spouse or next of kin of one of his deceased nationals.

**Same — limitation of time.**

R. L. 1905, § 3696, in limiting the time within which the priorities of right of administration thereby conferred must be asserted, uses the word "neglect" synonymously with "fail."

**Definition of creditor.**

One holding a claim for funeral expenses is a "creditor," within R. L. 1905, § 3696, subd. 2, and may apply for administration pursuant to the provisions thereof.

**Appointment of creditor.**

A creditor, whose claim is for funeral expenses of the deceased, may be appointed administrator of the estate of his deceased debtor, though the only assets consist of a cause of action for the wrongful death of the decedent.

**Creditor has no right of nomination.**

Under R. L. 1905, § 3696, subd. 2, the probate court has no power to grant letters of administration to any one except a creditor, or to some other person interested in the administration of the estate; a creditor having no authority under such subdivision to nominate a stranger.

**Foreign consul may intervene and appeal.**

A foreign consul, as such, has a proper status to intervene in and to become a party to proceedings upon an application to appoint an administrator of the estate of one of his deceased nationals dying in this state, and likewise may appeal from the order of the court making the appointment.

**Person without interest eligible to appointment, when.**

Under R. L. 1905, § 3696, subd. 3, construed in the light of its history, interest in the administration of the estate is not essential to eligibility to appointment as administrator after the lapse of four months from the death of the deceased without application by any person so interested.

G. A. Westphal was appointed administrator of the estate of Stanislaw Lis by the probate court for Hennepin county. The facts are stated at the beginning of the opinion. From the order of appointment Hugo Silvestri, imperial and royal Austro-Hungarian consul of Chicago, who appeared in the proceedings and objected to the appointment, appealed to the district court for that county. The appeal was heard upon stipulated facts before Booth, J., who made findings and as conclusion of law affirmed the order of the probate court. From the judgment entered pursuant to the order for judgment, the consul appealed. Reversed.

*Moritz Heim,* for appellant.

*Ernest W. Lonquist, G. A. Westphal* and *Otto Kueffner,* for respondent.

PHILIP E. BROWN, J.

Stanislaw Lis, a native and citizen of Austria, died intestate on October 14, 1911, while residing in Hennepin county, Minnesota, under circumstances giving his next of kin a claim for damages for his wrongful death; such next of kin being a widow and seven minor children, all citizens of Austria and never residents of the United States. Thereafter, on November 16, 1911, R. F. Bertch & Com-

pany, a corporation, petitioned the probate court of Hennepin county that letters of administration be issued upon the estate to G. A. Westphal, an attorney of Minneapolis, alleging substantially the above facts, claiming that it was a creditor of "the estate" of the decedent, that the estate consisted solely of the claim for the decedent's wrongful death, and that Westphal was a suitable and competent person to administer the estate. Before the court acted on this petition, however, and on December 13, 1911, a counter petition was filed by Hugo Silvestri, the Austro-Hungarian consul, of Chicago, Illinois, within whose consular jurisdiction the state of Minnesota was at that time located. This petition asked that Moritz Heim, an attorney of St. Paul, who was alleged to be a suitable and competent person therefor, be appointed administrator of the estate. The probate court denied this petition, and granted the administration to Westphal, pursuant to the petition of R. F. Bertch & Company, and thereupon the consul appealed to the district court.

Upon such appeal the facts were agreed upon by stipulation, from which it appeared, so far as here material, in addition to the facts above set forth, that the said Westphal and Heim were both "competent" to act as administrators of the estate, nothing being said as to their suitability; that the rights of R. F. Bertch & Company as a "creditor" were based solely upon services rendered as undertaker and for burial expenses of the decedent; and that Silvestri was the Austrian consul whose consular district included the state of Minnesota. The district court found the facts substantially as above stated, and, further, that Westphal was a "competent and suitable" person to administer the estate, and that Heim was "competent," nothing being said about his "suitability." The order of the probate court, appealed from, was thereupon affirmed, and from the judgment of the district court to such effect this appeal was taken by Silvestri.

The appeal is prosecuted in this court, however, by Edgar Prochnik, the successor of Silvestri as consul for Austria-Hungary; Prochnik having, by stipulation entered into September 23, 1912, been substituted in this proceeding in the place and stead of Silvestri. From this stipulation it appears that Prochnik was not a resident of Minnesota at the time of the commencement of this proceeding in

the probate court, but it fairly appears therefrom that at the time of his substitution herein he was a resident of St. Paul, with consular jurisdiction covering the state of Minnesota. Hereafter in the course of this opinion we shall refer to the appellant as though he had, instead of his predecessor in office, petitioned for the administration, except, of course; where the determination of any question involved may require otherwise.

The appellant made his appearance in the probate court as (a) Austrian consul, (b) as personal representative of his deceased national, (c) as the legal representative of the heirs and next of kin, who were his nationals, and were absent and not otherwise represented, and (d) as the consular guardian of the absent heirs, the same being minors; and the grounds upon which it is urged in this court that the petition of the consul should have been granted, are as follows:

1. That the Austrian consul, or his nominee, had the paramount right as such to administer the estate of his deceased national.

2. That the consul, or his nominee, as the legal representative of the widow and children, had priority of right to letters of administration upon the said estate.

3. That Heim was a more suitable person to administer the estate than the said Westphal, and that it was an abuse of discretion on the part of the court to deny letters to him and grant them to the said Westphal; and

4. That in any event the respondent, Westphal, was not entitled to letters of administration, for the reason that he was not within any of the classes of persons prescribed by law as being entitled to administration, and no facts appear of record giving the court any jurisdiction to appoint him.

We will discuss these points in the same order, except that we will consider separately the two questions involved in the appellant's first point; the same being—first, whether the appellant, as consul, had a paramount and absolute right of appointment under the statutes of this state; and, second, if not, whether, as urged by him, he had such right by virtue of any treaty between the United States and Austria.

1. The statute which we are called upon to construe is R. L. 1905, § 3696, and at the outset we must say that we find this statute somewhat ambiguous on its face, as will appear from our subsequent discussion of the same. Wherefore we may, and must, look to its history as one of the guides to its interpretation. Manston v. McIntosh, 58 Minn. 525, 528, 60 N. W. 672, 28 L.R.A. 605; Hinckley v. Kettle River R. Co. 80 Minn. 32, 82 N. W. 1088; Loper v. State, 82 Minn. 71, 84 N. W. 650; Bender v. City of Fergus Falls, 115 Minn. 66, 131 N. W. 849; Northwestern Trust Co. v. Bradbury, 112 Minn. 76, 127 N. W. 386; Lockey v. Lockey, 112 Minn. 512, 128 N. W. 833.

And, the statute under consideration being found in a general revision, the law as therein written will be deemed to be the same as it stood prior to the revision, unless we find from the statute itself or its history a clear intention to change it. Hugo v. Miller, 50 Minn. 105, 111, 52 N. W. 381; Becklin v. Becklin, 99 Minn. 307, 311, 109 N. W. 243; Evans v. City of Redwood Falls, 103 Minn. 314, 115 N. W. 200; Schmoll v. Lucht, 106 Minn. 188, 191, 118 N. W. 555; Odegard v. Lemire, 107 Minn. 315, 317, 119 N. W. 1057; State v. Ledbeter, 111 Minn. 110, 126 N. W. 477; U. S. & Canada Land Co. v. Sullivan, 113 Minn. 27, 128 N. W. 1112, An. Cas. 1912A, 51; Duluth T. Ry. Co. v. City of Duluth, 113 Minn. 459, 130 N. W. 18; State v. Schmahl, 118 Minn. 319, 136 N. W. 870.

Moreover, the notes of the Revision Commission of 1905 advise us that it was not the intention of such commission to change the statutes covered by section 3696 and related sections. See Revisors' Notes, page 30, to chapter 76, where the following language is found: "Except as herein mentioned, we have retained the existing law with such combination and condensation as seemed advisable." And since the sections of the revision with which we are here concerned are not mentioned in such notes as having been changed, it would seem that the Revision Commission did not intend to change the laws which they purport to compile.

2. This rule, as to the interpretation of revisions in general and of the revision of 1905 in particular, has a direct and peculiar bearing upon the instant case, not only in connection with the determination of the question of priority of right of appointment as between

the appellant and the respondent, but also as concerning a point of probate procedure in cases like the one before us, which point, though not directly raised herein, is so closely connected with the questions actually involved, and historically is so instructive upon the points which we are called upon to decide, that we are constrained to discuss and determine it before addressing ourselves to the matters directly presented on this appeal.

The first statutory recognition, in this state, of the rights of foreign consuls or representatives, in connection with administration upon estates of their deceased nationals, seems to have been by Laws 1871, p. 111, c. 56, amending G. S. 1866, c. 51, § 20. This act was as follows:

"When application is made to the judge of probate for the appointment of an administrator of an intestate estate, or for letters of administration with the will annexed, he shall cause notice of the same and of the time and place of hearing thereof, to be published for three successive weeks in such newspaper as he shall direct, and when such application is made by any person, not the widow, or of kin to the deceased, and the deceased was a native of any foreign country, the judge of probate shall cause such notice of the time and place of hearing such application to be served on the consul or other representative of the kingdom, state or country of which the deceased was a native, residing in the state of Minnesota, who may have filed a copy of his appointment as such consul or representative with the secretary of the state, by depositing a copy thereof in the post office, postage paid, addressed to such consul or representative, and in case the kingdom, state or country of which the deceased was a native, shall have no consul or representative in the state of Minnesota, then such notice shall be served as aforesaid on the secretary of state, and shall be by him forwarded to the representative of such kingdom, state or country at the city of Washington."

This law stood as above quoted, without change, until 1889, when it was incorporated in the Probate Court Code. Laws 1889, c. 46. Here it appeared as sections 73 [p. 110] and 317 [p. 156] the for-

-mer being in the chapter dealing with administration of estates of intestates, and the phrase "or for letters of administration with the will annexed," found in the Laws of 1871, being omitted, but otherwise being practically identical with the first part of chapter 56 of such Laws down to the portion thereof beginning "and when such application is made," etc., at which point such chapter is taken up and re-enacted word for word by section 317 of the Probate Code. This section is in chapter 20, entitled "Miscellaneous Provisions," but upon the margin of the page is found the following note, purporting to index the contents of such section: "Notice of application for letters of administration with the will annexed."

The act of 1871 next appeared in the Statutes of 1894, and here again, as in the Laws of 1889, its first, and general, provisions were separated from its second, and specific, provisions, appearing as sections 4480 and 4732, respectively; the latter section being precisely identical with section 317 of the Laws of 1889 and with the latter portion of the act of 1871, except that the word "counsel"[1] is erroneously used for the word "consul," and the section was given a caption identical with the marginal index note to section 317, above mentioned, so that, when read in connection with its caption, section 4732 of the Statutes of 1894 was limited to applications for administration with the will annexed.

Finally, section 4732 of the Statutes of 1894 was carried into Revised Laws 1905 as section 3642, and as a provision dealing only with applications for administration with the will annexed; the other, and general, portion of the act of 1871 being covered by R. L. 1905, § 3642, providing generally for notice in probate proceedings.

From this review of the statutes relating to notice to foreign representatives of applications for administration upon the estates of their deceased nationals, we can reach but one conclusion, viz., that the change of wording found in R. L. 1905, § 3642, which section was adopted precisely as reported by the Revision Commission, was caused by the marginal note to section 317 of the Probate Code of 1889; for, disregarding such note, section 317 applied to appli-

---

[1][This is the word which appears in the enrolled bill of the act of 1889.]

120 M.—9.

cations for administration upon intestate estates, as well as to applications for administration with the will annexed, and certainly in reason it would seem that the notice should be given in the one case if in the other. That there was no change in the statute up to and including G. S. 1894, § 4732, is made manifest by the recurrence of the peculiar phrase "widow or of kin," which runs through all of the statutes up to the revision of 1905, where the term "next of kin" is used, instead of the term "of kin." Since, then, the notes of the Revision Commission declare, as noted in the first subdivision of this opinion [page 127, supra] that no change was intended to be made, except as therein stated, and this section is not referred to as having been changed, we conclude, applying the rule announced at the outset of this opinion, that there has been no change. We hold, therefore, that upon an application for administration upon the intestate estate of a deceased foreigner the notice prescribed by R. L. 1905, § 3642, should be given.

3. This brings us to the first question raised by the appellant's first contention, namely: Did the Austrian consul have the paramount right of appointment by virtue of our statutes? In order to answer this question intelligently it is necessary to set out the statute here applicable (R. L. § 3696) at length. It is as follows:

3696. "Who entitled to administration.—Administration of the estate of a person dying intestate shall be granted to one or more of the persons hereinafter mentioned, and in the following order:

"1. The surviving spouse or next of kin or both, as the court may determine, or some person selected by them or either of them, provided that in any case the person so appointed shall be suitable and competent to discharge the trust.

"2. If all such persons are incompetent or unsuitable, or refuse to accept, or if the surviving spouse or next of kin, for thirty days after the death of the intestate, neglect to apply for administration, the same may be granted to one or more of the principal creditors, if any such are competent and willing to take it, or to some other person who may be interested in the administration of the estate.

"3. If none of the persons mentioned in the preceding subdivisions

of this section shall apply for administration within four months after the death of the intestate, the same shall be granted to any suitable or competent person interested in the estate by purchase or otherwise.

"4. If the decedent was a native of any foreign country, and the surviving spouse and next of kin neglect for thirty days after his death to apply for administration, the same may be granted to the consul or other representative of the country of which the decedent was a native, residing in this state, who has filed a copy of his appointment with the secretary of state, or to such person as he may select, if suitable and competent to discharge the trust.

"5. If the person so appointed neglects for thirty days, after written notice of such appointment, under the seal of the probate court, served personally or by mail, to file the oath and bond required by law and the court, such neglect shall be deemed a refusal to serve, and the court may appoint such other person or persons as are next entitled to administer such estate. Such person may be appointed without notice."

The most conspicuous feature of this statute is its mandatory character as regards the order of appointment, and, if the five subdivisions thereof are to be taken as co-ordinate, each of them is subject to the mandate that the appointment "shall be  *  *  *  in the following order." Except as expressly provided with reference to suitability and competency, no discretion is left to the court as to the order of appointment; the use of the word "may" in subdivisions 2 to 5 being indicative merely of a discretion to appoint in the order named and subject to the conditions expressly specified.

But it will not do to accept this numerical order as the order of priority, without consideration of the new element which enters into the classification at subdivision 4, namely, the foreign nativity of the deceased. According to all rules of classification, this calls for a determination of whether subdivisions 1, 2, and 3 are to be considered as having a merely general application, and hence as being applicable only in cases where it is not specifically provided otherwise, thus leaving subdivision 4 standing as an independent provision,

which, pro tanto, superseded the general provisions of the preceding subdivisions. It would seem that this question should be answered in the affirmative. It is very noticeable that subdivision 4 expressly relates back to and connects with subdivision 1. It says that if the decedent was a foreigner, "and the surviving spouse and next of kin neglect for thirty days after his death to apply for administration, the same may be granted," etc. These are the same words which are used in subdivision 2 to express the conditions upon which a creditor may be appointed, and it will not do to say that this places the consul and the creditor upon the same plane of priority, for such would of itself subvert the numerical order, so far as the same could be construed as indicative of the order of priority between persons coming within the classes designated by subdivisions 2 and 4.

Furthermore, the history of subdivision 4 seems to require it to be treated as an independent provision, giving the consul priority over the creditor where the deceased was a foreigner, and this conclusion becomes, we think, unquestionable, when we apply the rule, stated in the first point of this opinion, according to which the Revised Laws must be interpreted. Referring to the statutes embodied in R. L. 1905, § 3696, we find that this section, down to subdivision 4, is identical, with certain changes in the wording of subdivision 3 which we will presently notice, with Laws 1889, p. 109, c. 46, § 71, as amended by Laws 1893, p. 226, c. 116, § 7. See G. S. 1894, § 4478. Under the law as it stood in 1894, there was no special provision with regard to the right of a foreign representative to represent his deceased nationals, other than section 4732 of the Statutes of that year (section 317 of Laws 1889, above referred to in subdivision 2 of this opinion), providing that such representative should be given notice. His right to represent his deceased nationals seems to have been first conferred, so far as our statutes are concerned, by Laws 1895, p. 222, c. 98. By this act Laws 1889, p. 109, c. 46, § 71, subd. 2, which was, as we have stated, practically identical with R. L. 1905, § 3696, subd. 2, was amended so as to read as follows:

"If the widow, or next of kin, or the person selected by them, is unsuitable or incompetent, or if the widow, or next of kin neglects for

thirty days after the death of the intestate to apply for administration, or to request that administration be granted to some other person, the same may be granted if the deceased was a native of any foreign country, to the consul or other representative of the kingdom, state or country, of which the deceased was a native, residing in the state of Minnesota, who may have filed a copy of his appointment as such consul or representative with the secretary of the state, or to such person as such consul or representative may request to have appointed, if suitable and competent to discharge the trust; but if such deceased was not a native of any foreign kingdom, state or country, or if said consul or representative shall for thirty days after notice, served as required in section three hundred and seventeen (317) of this act, neglect to apply for administration or to request that administration be granted to some other person, the same may be granted to one or more of the principal creditors, if any such are competent and willing to take it, or to such other person as may be interested in the administration of the estate of the deceased."

Under this statute there certainly could be no question as to whether the foreign representative took precedence over the creditor, for the only mention of the creditor in the whole act, as thus amended, is either in express subordination to the right of the consul, if the latter be suitable and competent, where the deceased was a native of a foreign country, or upon the express condition that the deceased was not a foreigner. And thus the law stood at the date of the present revision, for the only other amendment, by Laws 1899, p. 153, c. 149, §. 2, merely inserted the phrase "or surviving husband" after the word "widow," so that the law as it stood prior to 1905 may be summarized as follows, aside from questions of suitability and competency:

The widow, surviving husband, or next of kin, or some one selected by them, had the first right of appointment in all cases, for a period of 30 days from the death of the decedent.

If the decedent was not a foreigner, the creditor, or some other person interested in the estate, had the next right. But if the deceased

was a native of a foreign country, the consul or other representative of such country was next after the widow, etc., in order of priority of right, such right being subject to loss by failure to exercise it within 30 days after the notice provided for by G. S. 1894, § 4732 (Laws 1889, p. 156, c. 46, § 317) ; and the creditor had no right to administer until the expiration of such 30 days.

Finally, in any case, where those entitled to priority neglected for four months from the death of the decedent to assert the same, the court could appoint "any suitable and competent person, upon application being duly made to the probate court of the proper county by any person interested in the estate of the deceased by purchase from any of the heirs of the deceased or otherwise;" this provision having been added by Laws 1893, p. 226, c. 116, § 7, and never having been changed until, by subdivision 3 of section 3696 of the revision of 1905, it was made to read so that, if literally construed, interest in the administration of the estate is essential to eligibility to appointment, even after the lapse of four months from the death of the deceased without any grant of administration.

Such was the law at the time of the present revision, and, in view of what we have already said as to the presumption against an intention on the part of either the Revision Commission or the legislature to change it, we find no difficulty in arriving at the conclusion that by R. L. 1905, § 3696, it was intended to preserve the priority of right theretofore given to consuls or other representatives of foreign countries. This section was adopted word for word from the report of the Revision Commission, except that subdivision 5 was added by the legislature. This subdivision we deem to be a new enactment, intended to provide for summary appointment after 30 days' neglect of the person appointed, pursuant to any of the previous subdivisions, to qualify. It has no bearing on the case before us.

It will at once be noticed that under the law as at present written the right of the foreign representative seems to be unlimited in point of time; but in view of the history of this provision, as above recited, and likewise in conformity with the manifest intent of the whole law on the general subject here involved, we conclude that such right

is limited to 30 days after receiving the notice which, as we have held in subdivision 2 of this opinion, he is entitled to receive. When thus construed the law becomes clear, logical, and simple of administration. Construed in any other way, it is contradictory and almost unintelligible. Between these two courses, therefore, we cannot hesitate, especially as the construction which we have adopted would seem not only to be justified, but demanded, by the rules of statutory construction to which we have so freely adverted above.

But it does not follow that the petitioning consul in the instant case was entitled to appointment as a matter of right. As a matter of law he was not so entitled, for he was not a resident of this state. The language of the statute (subdivision 4) is that, upon the conditions recited, administration may be granted to the consul or other representative of the country of which the deceased was a native, *residing in this state,* who has filed a copy, etc., or to such person as he may select. This language is practically identical with so much of the act of 1871, and subsequent re-enactments thereof, including R. L. 1905, § 3642, the history of which we have recited in subdivision 2 of this opinion. In these statutes, relating to notice to foreign representatives, the phrase "residing in this state" manifestly qualifies "consul or other representative," as will appear from the mere reading of the statutes; and if we could doubt that such is the intent of R. L. 1905, § 3696, subd. 4, our doubt would be removed by reference to the other and prior statutes, cited above, in which the meaning is absolutely clear. We hold, therefore, that the petitioning consul, not being a resident of this state, was not entitled, as a matter of right, either to appointment himself or to nominate any other person for appointment.

4. The next question presented by the appellant's first contention, viz., that he was entitled to appointment as a matter of right, is: Does any treaty between the United States and Austria give or purport to give to Austrian consuls the absolute right to administer upon the estates of their deceased nationals dying in this country? The treaty with Austria, upon which the appellant relies, is the one which was concluded July 11, 1870, and proclaimed June 29, 1871.

See Compilation of Treaties in Force in 1909. Article 1 of this treaty [page 39] provides:

"Consuls-general, consuls and other consular officers appointed and taking office according to the provisions of this article, in one or the other of the two countries, shall be free to exercise the right accorded them by the present convention throughout the whole of the district for which they may be respectively appointed. The said functionaries shall be admitted and recognized respectively upon presenting their credentials in accordance with the rules and formalities established in their respective countries. The exequatur required for the free exercise of their official duties shall be deliverd to them free of charge; and upon exhibiting such exequatur they shall be admitted at once and without interference by the authorities, federal or state, judicial or executive, of the ports, cities and places of their residence and district, to the enjoyment of the prerogatives reciprocally granted."

Under this provision the petitioning consul, being the Austrian representative for the district in which Minnesota was at that time included, and having filed a certified copy of his exequatur in the office of the secretary of state of this state, was entitled to exercise in Minnesota all the rights and privileges legally conferred upon him, by the treaty in question; and article 8 of the treaty gave him the right to apply to the courts in the event of any infraction thereof. What, then, were his rights and privileges so conferred? The only provision thereof which can be invoked as possibly conferring any rights upon him which are here material is found in article 15 [page 44] which is as follows:

"Consuls-general, consuls, vice consuls and consular agents, also consular pupils, chancellors and consular officers shall enjoy in the two countries all the liberties, prerogatives, immunities and privileges granted to functionaries of the same class of the most favored nation."

It is upon this "favored nation clause," which is likewise repeated in the petitioning consul's exequatur, that the appellant bases his claim here involved, invoking article 14 of the treaty with Sweden, proclaimed March 20, 1911 (37 St. 17), which is as follows:

"In case of the death of any citizen of Sweden in the United States or of any citizen of the United States in the Kingdom of Sweden without having in the country of his decease any known heirs or testamentary executors by him appointed, the competent local authorities shall at once inform the nearest consular officer of the nation to which the deceased belongs of the circumstances, in order that the necessary information may be immediately forwarded to parties interested. In the event of any citizens of either of the two contracting parties dying without will or testament, in the territory of the other contracting party, the consul-general, consul, vice consul-general, or vice consul of the nation to which the deceased may belong, or, in his absence, the representative of such consul-general, consul, vice consul-general, or vice consul, shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estate. It is understood that when under the provisions of this article, any consul-general, consul, vice consul-general, or vice consul, or the representative of each or either, is acting as executor or administrator of the estate of one of his deceased nationals, said officer or his representative shall, in all matters connected with, relating to, or growing out of the settlement of such estates, be in such capacities as fully subject to the jurisdiction of the courts of the country wherein the estate is situated as if said officer or representative were a citizen of that country and possessed of no representative capacity whatsoever."

The benefit of this article of the treaty with Sweden being claimed by the Austrian consul by virtue of the "most favored nation clause" found in the treaty with Austria, the question at once arises, and

is raised by the respondent, as to whether such clause can be invoked for such purpose. From the fact that the decision of this question was expressly pretermitted in the very recent case of Rocca v. Thompson, 223 U. S. 317, 334, 32 Sup. Ct. 207, 56 L. ed. 453, affirming Estate of Ghio, 157 Cal. 552, 108 Pac. 516, 37 L.R.A. (N.S) 549, 137 Am. St. 145, it would seem that the Supreme Court of the United States was in doubt on this point. However, it was held by the state court that the "favored nation clause" conferred the benefit of a stipulation giving to consular officers the right to administer upon the estates of their deceased nationals (see Estate of Ghio, supra), and such would seem to be the effect of such a clause. It is true that the benefits of the provisions of reciprocity treaties have been denied to other nations whose only claim thereto was based upon a "most favored nation" clause (see Bartram v. Robertson, 122 U. S. 116, 7 Sup. Ct. 1115, 30 L. ed. 1118; Devlin on the Treaty Power, § 131); but it seems that the courts have not deemed consular conventions, of the kind here involved, to be within the same class with reciprocity treaties (see Devlin on the Treaty Power, § 131; McEvoy v. Wyman, 191 Mass. 276, 77 N. E. 379, 114 Am. St. 601; In re Lobrasciano's Estate, 38 Misc. Rep. 415, 77 N. Y. Supp. 1040; In re Scutella's Estate, 145 App. Div. 156, 129 N. Y. Supp. 20; Carpigiani v. Hall, 172 Ala. 287, 55 South. 248).

Assuming, then, that the Austrian consul was entitled to invoke the provisions of article 14 of the treaty with Sweden, the next question is whether such article purports to confer upon consular officers the right here claimed as a matter of absolute right, such as would supersede state statutes in conflict therewith. This question is of grave importance. As was said by Mr. Justice Shaw, in delivering the opinion of the Supreme Court of California, in Estate of Ghio, supra, at page 557: [1]

"The question presented would directly affect the right of administration upon the estates of all citizens of all the above named countries (whose treaties with the United States contain the most fa-

[1] [37 L.R.A. (N.S.) p. 549, 108 Pac. p. 523.]

vored nation clause) residing in this state, of whom there is doubtless a large number. It is also of grave importance because its solution in favor of the appellant necessarily ascribes to the federal government the intent, by means of its treaty-making power, to materially abridge the autonomy of the several states and to interfere with and direct the state tribunals in proceedings affecting private property within their jurisdictions. It is obvious that such intent is not to be lightly imputed to the Federal government, and that it cannot be allowed to exist except where the language used in a treaty plainly expresses it, or necessarily implies it."

Approaching the question there presented in the spirit indicated by the above-quoted language, it was held that article 9 of the treaty between the United States and the Argentine Republic, of date July 27, 1853 (10 St. 1005), did not purport to contravene or supersede the state laws, and that under such treaty a foreign consul was not entitled, as a matter of right, to administer the estates of his deceased nationals, as against a priority of right conferred upon the administrator by the state law, which decision was affirmed, both in its conclusion and its reasoning, by the Supreme Court of the United States. See Rocca v. Thompson, supra. The provision construed in this case was as follows:

"If any citizen of either of the two contracting parties shall die without will or testament, in any of the territories of the other, the consul-general or consul of the nation to which the deceased belonged, or the representative of such consul-general or consul, in his absence, shall have the right to intervene in the possession, administration and judicial liquidation of the estate of the deceased, conformably with the laws of the country, for the benefit of the creditors and legal heirs."

The feature of this provision which was given controlling effect, both in the state court and the Federal court, is, to quote from the opinion of the latter, that "the sole right conferred is that of intervention and that conformably with the laws of the country." The question, then, before us in the instant case, is whether the treaty

with Sweden (article 14) confers any greater right than the provision of the treaty with the Argentine Republic above-quoted. In the Rocca case, supra, Mr. Justice Day seems to refer to the treaty with Sweden as expressly and clearly giving Swedish consuls an absolute right in the premises; but at most this was a mere dictum, and we cannot follow it without question, especially as Mr. Justice Day's use of the Swedish treaty by way of comparison with the Argentine treaty, and the language used by him in this connection, may well be referred to the fact that the treaty with Sweden expressly gives the right to be "appointed as administrator," whereas the Argentine treaty conferred only the "right to intervene in the possession, administration, and judicial liquidation of the estate of the deceased." That article 14 of the treaty with Sweden purports to grant Swedish consuls the "right to be appointed as administrator of such estate"—that is, of the estates of their deceased nationals dying in this country—cannot be gainsaid, for so it is expressly declared, and to this extent, at least, the decision in the Rocca case is not here in point; but article 14 contains a qualification similar to that found in article 9 of the Argentine treaty, namely, "so far as the laws of each country will permit." If this clause qualifies the "right to be appointed as administrator," as well as the right, pending the grant of letters of administration, to "take charge of the property," etc., then under the decision in the Rocca case, and also upon independent reasoning, the state laws will control, though they limit the right of the consul both in point of time within which he must assert his treaty right and in the matter of residence in the state.

Grammatically it may well be contended that this qualifying clause applied only to the clause with which it is immediately coupled, thus leaving the right to administration without qualification. In view. however, of the presumption so aptly referred to by Mr. Justice Shaw in Estate of Ghio, supra, against any intention on the part of the Federal government to invade, by treaty, the province of state law, in a matter so inherently local, as distinguished from national, and likewise from a consideration of the subject matter and the provisions of this whole article, and especially the latter part, we have

concluded that the right to appointment as administrator is conferred by such article upon the expressed condition that it can be claimed only "so far as the laws of each country will permit." It would certainly seem strange that the right to temporary possession and control until appointment of an administrator should thus be qualified, and the right to be appointed administrator be given in unqualified terms. The former is often no less important than the latter. Likewise, we cannot think, in the absence of clearly expressed intention so to do, that the Federal government intended to take the matter of administration of the estate of foreigners entirely out of the control of the states. See Lanfear v. Ritchie, 9 La. An. 96; 25 Harvard Law Rev. 735.

Holding, as we do, that the treaty right here invoked is, by its own terms, subject to state control, we are not called upon to determine whether the Federal government could, by treaty, confer an absolute right upon foreign consuls to administer upon the estates of their deceased nationals, anything in the state laws to the contrary notwithstanding.

5. The appellant's second point, like his first, comprises two contentions, viz.: (a) That under the law of nations he represented the widow and minor children of the decedent, who were all nonresident aliens, to the same extent as though he had held their express power of attorney; and (b) that as such representative he had the right to be appointed administrator, or to nominate the appointee, provided only that he should assert such right by proper application prior to the actual appointment of some one else, or has not been guilty of unreasonable "neglect," it being argued in this connection that the mere failure of the surviving spouse or next of kin to apply within 30 days is not equivalent to "neglect" to so apply.

In considering this point, we will assume that the petitioning consul had the right, as consul, to appear for and represent his nonresident nationals in the proceedings here involved; but we cannot agree that, without some express appointment, he can be considered either as their nominee or as entitled to assert their right to priority, so as to dispense with an application by them for administration. Nor do we think that the statute uses the word "neglect" in any

sense other than as synonymous with "fail." The uncertainty as to the date when the priorities provided for by the statute would expire, if the word "neglect" were construed as contended for by the appellant, would involve the application of the statute in utmost confusion, and no such intention can be attributed to the legislature.

6. The appellant's third point is that the trial court abused its discretion, and failed to choose, as between the two applicants for appointment, the one most suitable to discharge the trust. All that need be said in this regard is that we cannot, upon the record before us, say that such was the case. See Hanson v. Nygaard, 105 Minn. 30, 35, 117 N. W. 235, 127 Am. St. 523.

7. The appellant's fourth contention is that the respondent is not within any of the classes of persons prescribed by law as entitled to administer, and that no facts appear of record authorizing his appointment. The grounds of this contention are:

(a) That R. F. Bertch & Co., the petitioner upon whose application the respondent was appointed, is not a creditor of the deceased, but of the estate, and that neither did it come within the designation of "some other person who may be interested in the administration of the estate."

(b) That since no authorized person requested it to bury the deceased, it could not claim to be even a creditor of the estate, and that therefore the petitioner could at best claim only as a person interested "by purchase or otherwise," within subdivision 3 of section 3696, which could be done only after the expiration of four months from the death of the deceased.

(c) That since practically all the assets consisted of a claim for the wrongful death of the deceased, no one but the heirs had the right to assert such claim, and that, they having failed to do so, there was nothing which a stranger could administer upon; and finally

(d) That in any event the respondent, Westphal, was not within any of the classes designated by the statute, and did not claim as such, but only as the nominee of R. F. Bertch & Co., and that the statute does not give a creditor the right to nominate anyone else to be appointed, as is given the surviving spouse or next of kin, and to foreign consuls when the deceased was a foreigner.

Taking up these grounds in the order presented, we hold that grounds (a) and (b) cannot be sustained. There is some conflict of authority as to whether one holding a claim for funeral expenses is a "creditor," within the meaning of a statute giving "creditors" a right to administer upon the estates of their deceased debtors (see 11 Am. & Eng. Enc. [2d ed.] 773; 18 Cyc. 90; Hildebrand v. Kinney, 172 Ind. 447, 87 N. E. 832, 19 An. Cas. 788); but we think that the better and sounder rule is to regard such a person as a creditor. R. L. 1905, § 3745, gives funeral expenses priority of payment over all other "debts against the decedent;" and we fail to see why the holder of such a claim should not be held to be a creditor within the meaning of section 3696, subd. 2.

Nor can we hold with the appellant upon ground (c). It is true that the action for death is for the benefit of the surviving spouse and next of kin, and may be settled or released by them, so as to bar a subsequent action by the administrator. Foot v. Great Northern Ry. Co. 81 Minn. 493, 84 N. W. 342, 52 L.R.A. 354, 83 Am. St. 395; Sykora v. Case T. M. Co. 59 Minn. 130, 60 N. W. 1008. But it is also true that the right of action is in the personal representative (see R. L. 1905, § 4503; Hutchins v. St. Paul M. & M Ry. Co. 44 Minn. 5, 46 N. W. 79; Foot v. Great Northern Ry. Co. supra), and that he may settle or compromise, even without the consent of the surviving spouse or next of kin (Foot v. Great Northern Ry. Co. supra). A cause of action for the death of the decedent constitutes sufficient assets to authorize the appointment of an administrator (Hutchins v. St. Paul, M. & M. Ry. Co. supra), and we think that a creditor whose claim is for funeral expenses may have administration for the purpose of enforcing the cause of action for death, especially in view of the requirement of section 4503 that funeral expenses shall be deducted from the recovery as being the first charge thereon. See Lahti v. Oliver Iron Min. Co. 106 Minn. 241, 118 N. W. 1018; Swift & Co. v. Johnson, 71 C. C. A. 619, 138 Fed. 867, 1 L.R.A.(N.S.) 1161.

This brings us to a ground which we must sustain. The appellee, Westphal, did not claim the appointment in his own right as a person interested in the administration of the estate in any manner

whatsoever. His sole right to appointment, or rather his sole status. to be appointed, is that he is the nominee of R. F. Bertch & Co., and was found by the court to be competent and suitable. But the statute gives creditors no power of nomination, and the express grant of such power to members of classes designated by subdivisions 1 and 4 of section 3696 would seem to exclude any such implied power in the creditor, to whom no such power is expressly granted. After an exhaustive examination of authorities from many other states, we find that it is the general policy of most of the states to give administration of intestate estates first to persons interested in the estates, upon the presumption that such persons will be most likely to conserve the assets for their own benefit and for that of all other persons who may be entitled to share therein, and that in the absence of express power of nomination the right so given is personal and nondelegable. See 11 Am. & Eng. Enc. (2d ed.) 778; 18 Cyc. 92. And it appears to us that our statute embodies and declares this policy. Again, if a creditor has the right to nominate some one else, or if the court, on the creditor's petition, has the power to appoint a stranger, subdivision 3 of the section under consideration would be rendered useless, in the discretion of the trial court, whenever it chose to appoint a stranger at the instance of a creditor. In Estate of Daggett, 15 Idaho, 504, 98 Pac. 849, the point here under consideration was decided in accordance with the conclusion which we have announced. Said the court at page 508:

"The language itself of section 5351 convinces us that appellant's contention is untenable. Subdivision 1 designates the persons first entitled to administer, namely: 'The surviving husband or wife, or some competent person whom he or she may request to have appointed.' It will be noticed that the language composing the latter part of this subdivision is not found in connection with any of the other ten subdivisions. In other words, the statute itself specifically authorizes a husband or wife, by designation and request, to advance any competent person to his or her own rank; but it does not authorize any one of any of the other classes, by request or otherwise, to advance a person to his or her rank. If the expression 'or some

competent person whom he or she may request to have appointed' had·been intended to apply to each of the eleven subdivisions, that language would have been placed in the body of the section preceding the subdivisions, in which case it would have applied to all th subdivisions."

If it should be urged that in the instant case there are no other persons interested than those represented on this appeal, the answer would be that this case can be determined only under the law as applicable to all cases, and the error in appointing the respondent, Westphal, lies in the lack of power of the court to appoint a stranger at the time this appointment was made.. It is true that in some states a power to appoint by virtue of a general equitable jurisdiction is recognized, in addition to the power conferred by statute. See Hildebrand v. Kinney, 172 Ind. 447, 87 N. E. 832, 19 An. Cas. 788, and cases therein cited. But certainly, we think, this power, if it exists in this state, should not, and, indeed, cannot, be exercised until the limits prescribed by the several subdivisions of section 3696 have expired; for otherwise the statute would be emasculated, if not virtually wiped out.

That the appellant, though not himself entitled to appointment or to nominate the appointee, as a matter of right has a proper status as a party to this proceeding, both below and here, cannot be doubted. As consul, it is his duty and right to protect the interests of his nationals, and to appear in proceedings concerning those rights; and, having an interest to safeguard, he has a status as party and to appeal, though not himself entitled of right to be appointed. Butcher v. Kunst, 65 W. Va. 384, 64 S. E. 967.

8. In holding that the respondent, Westphal, had no status to be appointed administrator of the estate of Stanislaw Lis, we do not mean to hold, or even to intimate, that on a new trial of this proceeding the trial court will, of necessity, be compelled to appoint the appellant, Edgar Prochnik, though he is the Austrian consul "residing in this state;" for the petitioning consul, Hugo Silvestri, was the Austrian representative for the district in which the state of Minnesota was included at the time of the application by R. F. Bertch &

120 M.—10.

Co., and as such representative he intervened in the proceeding, thus curing any irregularity due to the failure to give the notice which, as we have held in subdivision 2 of this opinion, should be given upon an application for the appointment of an administrator for the intestate estate of a deceased foreigner, and, furthermore, since such intervention was filed, thus showing that such representative had actual notice, the time during which a resident consul would have had priority has expired. And since, likewise, four months have elapsed since the death of the deceased without application for appointment by any of the persons given priority by subdivisions 1 and 2 of section 3696, the case is now controlled by subdivision 3. As this section now reads, it requires, if literally interpreted, that the person appointed must be "interested in the estate by purchase or otherwise;" but we cannot think that such is the law. Subdivision 3 was introduced into the statute by Laws 1893, p. 226, c. 116, § 7, and was carried verbatim into the Statutes of 1894 as subdivision 3 of section 4478. It was as follows:

"If none of the persons mentioned in the preceding subdivision of this section apply for administration as therein provided within four months after the death of the intestate, the same shall be granted to any suitable and competent person, upon application being duly made to the probate court of the proper county, by any person interested in the estate of the deceased by purchase from any of the heirs of the deceased, or otherwise."

The purpose of this provision is manifest. As the law stood before its adoption, the court was without power to appoint a stranger, even if all of the persons interested were unsuitable and incompetent, or refused to accept the appointment, and this provision was adopted to remedy the shortcomings of the statute in this regard. Under subdivision 2, both before and after the present revision, the court could, after 30 days, appoint a creditor or any other person "interested in the administration of the estate;" and hence there was, and still is, no necessity for subdivision 3, if taken literally as at present written. But if this subdivision is taken as it stood prior

to the revision, it fills a very important place in the law, which otherwise would be incomplete, and might at times prevent any administration of an estate at all. Under the rule of interpretation announced in subdivision 1 of this opinion, and applied in subdivisions 2 and 3, we hold that subdivision 3 must be read as it stood prior to the revision. Upon the retrial of this case, therefore, it will be for the trial court, in the exercise of its discretion, to appoint any "suitable and competent" person as administrator of Stanislaw Lis.

Judgment reversed.