withstanding this, the applicant must answer in good faith and not attempt to evade, conceal, or mislead."

In support of the judgment we may assume that the court found that this statement was made by plaintiff in good faith and without attempt to evade, conceal, or mislead. There is no evidence of any such purpose; nor can any such inference be properly drawn. That the form of application was prepared by defendant with a view of differentiating the required statement of actual losses incurred by the applicant from probable losses from doubtful accounts appears in the form itself.

[7] One of the ·separate statements appearing in its printed form of application is as follows:

"(6) We do not know of anything detrimental to the credit or standing of any customer or prospective customer, which would affect this policy, except as follows:"

This statement was stricken from the application before it was signed by plaintiff. Not having been required to make any statement on this subject, plaintiff might well have inferred that no information as to doubtful accounts was required. In view of the admissions in defendant's answer and its concessions of fact made at the trial, it does not seem necessary to discuss the other assignments of error which are urged on this appeal.

The judgment and order should be affirmed, with costs. All concur, except FOOTE, J., not voting, and MERRELL, J., who dissents.

MERRELL, J. Fair dealing should have prompted the applicant for credit insurance to disclose, not conceal, the fact that it held the deed of trust from its customer, which under the terms of the policy then before the parties was defined as constituting insolvency. Failure to do so was not, I think, inadvertent and constituted such a breach of warranty as should preclude any recovery by plaintiff.

---

(159 App. Div. 40.)

### In re D'ADAMO'S ESTATE.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1913.)

1. EXECUTORS AND ADMINISTRATORS (§ 24*) — RIGHT OF ADMINISTRATION — ITALIAN CONSUL.

    The treaty of May 8, 1878 (20 Stat. 725), between the United States and Italy provides that the consular agents of the respective nations shall enjoy in both countries all the rights which are or may hereafter be granted to the officers of the same grade of the most favored nation. The treaty between the United States and Sweden of June 1, 1911 (37 Stat. 1487, art. 14), provides that, where any citizen of either country dies intestate in the territory of the other, the consul, etc., of such decedent's nation shall have the right to administer on his estate. *Held* that, where an Italian subject died intestate in New York, leaving a wife and children who were subjects of Italy and resided there, the Italian consul was entitled to letters of administration in preference to decedent's brother who had no pecuniary interest in the estate.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 132–140; Dec. Dig. § 24.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TREATIES (§ 2\*)—POWER OF GOVERNMENT—CONSULAR ADMINISTRATORS.

The provision of a treaty between the United States and Sweden of June 1, 1911 (37 Stat. 1487, art. 14), that, if any citizens of either country die intestate in the territory of the other, the consul of decedent's nation shall have the right to administer on his estate was not in excess of the treaty making power of the federal government.

[Ed. Note.—For other cases, see Treaties, Cent. Dig. § 2; Dec. Dig. § 2.\*]

3. EXECUTORS AND ADMINISTRATORS (§ 26\*)—BOND BY ADMINISTRATOR—FOREIGN CONSUL.

An Italian consul appointed administrator of an Italian subject dying intestate in New York, pursuant to treaty between the United States and the Kingdom of Italy, must give the administrator's bond provided by Code Civ. Proc. § 2664, but letters granted to him should not be revoked for failure to do so, without giving him an opportunity to file such bond.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 144–170; Dec. Dig. § 26.\*]

Appeal from Surrogate's Court, Jefferson County.

In the matter of the estate of Carmine D'Adamo, deceased. From a decree of the Surrogate's Court (141 N. Y. Supp. 1103) denying a petition by Guovanni D'Adamo for the revocation of letters of administration issued to the Italian Consul and asking that letters be issued to petitioner, he appeals. Affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Gilbert S. Woolworth, of Watertown, for appellant.

Thomas F. McDermott, of Albany, for respondent.

KRUSE, P. J. The appellant, a resident alien and brother of the intestate, also a resident alien, seeks to have revoked the letters of administration issued to the Italian consul, the respondent.

The intestate at the time of his death was a subject of the kingdom of Italy. He left him surviving a widow and child, residents and subjects of that kingdom. The assets left by the intestate, aside from an alleged cause of action for causing his death, do not exceed $50 in value. The brother, who seeks revocation of the letters of administration issued to the Italian consul and the appointment of himself as administrator, has no pecuniary interest in the cause of action or in any of the assets left by said intestate. The surrogate held that the Italian consul was entitled to letters of administration in preference to the brother.

It is urged on behalf of the Italian consul that the brother is not in any event entitled to be appointed administrator, because he has no pecuniary interest in the estate. If the decision of the Court of Appeals in Lathrop v. Smith, 24 N. Y. 417, is still effective, it is unnecessary that the brother should have any pecuniary interest to entitle him to letters of administration. But that decision was made under the provisions of the Revised Statutes. 2 Rev. St. (1st Ed.) p. 74, pt. 2, c. 6, tit. 2, § 27. Afterward, and in 1893, these provisions were incorporated in section 2660 of the Code of Civil Procedure with the wording somewhat changed. The Revised Statutes provided that ad-

ministration in case of intestacy should be granted to the relatives of the deceased "who would be entitled to succeed to his personal estate." When this provision was put in the Code, the words "who would be" were left out. It is now urged, as it was in the case of Matter of Wilson, 92 Hun, 318, 36 N. Y. Supp. 882, that the amendment changed the rule of the Lathrop Case, and that the relative must have a present and immediate interest in the particular estate to be administered, in order to entitle him as a matter of right to administration. While, as is pointed out by Mr. Justice Merwin in the Wilson Case, the reasoning of the Lathrop Case applies with as much force to the provisions of the statute after the change in its wording as before, it is significant that these words were dropped out. I am not aware that the appellate courts have passed upon the precise question since that decision, and the views of the surrogates have not been in entire accord respecting the effect of the change in the statute.

In the case of Matter of Lowenstein, 29 Misc. Rep. 722, 62 N. Y. Supp. 819, which was after the decision in the Wilson Case, supra, it was held that the next of kin of an intestate, although they would not share in his estate, were entitled to letters of administration in preference to the public administrator. But in Matter of Seymour, 33 Misc. Rep. 271, 68 N. Y. Supp. 638, it was stated that what was said in the Wilson Case respecting the effect of the change in the statute was obiter, and it was held that the change in the statute indicated a legislative intent to restrict the granting of letters of administration to relatives who had an interest in the distribution of the intestate's estate. In that case the intestate left him surviving a widow and child who died subsequent to the decedent, the child first and then the widow, so that their interest in the estate had passed to her legal representatives, and administration was refused to the father of the intestate, who had no interest in the estate. That decision was followed in Matter of Patten, 80 Misc. Rep. 482, 142 N. Y. Supp. 452, where it was held that a grandchild who took all of the estate was entitled to letters of administration as against a half-brother of the intestate, who took nothing, although the brothers take precedence to grandchildren in the order of granting letters of administration under section 2660 of the Code of Civil Procedure. There are other surrogates' decisions upon either side of the question, but it is unnecessary to call attention to them.

There is much force in the suggestion that as between two relatives, one of whom is entitled to share in the estate and the other is not, the former should be entitled to preference as against the latter. Whether the statute has effected that change it is unnecessary to decide, since the question here is not between two relatives but between a blood relative and a stranger (that is, the consul is neither a relative nor has he any pecuniary interest in the property or claim); and there is another question in the case which, as I think, is decisive of the appeal, to which I will now call attention.

[1] It is contended on behalf of the Italian consul that he is entitled to letters of administration as a matter of right, invoking under the most favored nation clause in the treaty between the United States

and Italy the provisions of the convention between the United States and Sweden, proclaimed March 20, 1911, respecting the rights and privileges of consular agents regarding administration of property of citizens of one nation dying in the territory of the other. This favored nation clause in the Italian treaty provides in substance that the consular agents of the respective nations shall enjoy in both countries all the rights and privileges "which are or may hereafter be granted to the officers of the same grade of the most favored nation." Treaty of May 8, 1878, between the United States and Italy (20 Stat. 725). This clause was under consideration by this court in Matter of Scutella, 145 App. Div. 156, 129 N. Y. Supp. 20. That was an appeal from a decision of the Surrogate's Court of Cattaraugus county, decided November, 1910. At that time the Swedish treaty had not been made; but the provisions of the treaty between the United States and Argentine Republic of July 27, 1853 (10 Stat. 1009), were invoked under the favored nation clause contained in the Italian treaty. The Argentine treaty provided that, if any citizen of either of the two contracting parties should die without will or testament in any of the territories of the other, the consul general or consul of the nation to which the deceased belonged should have the right to intervene in possession, administration, and judicial disposition of the estate of the deceased, conformably with the laws of the country, for the benefit of the creditors and legal heirs. Surrogate Davie held that this provision did not entitle the Italian consul to letters of administration and appointed a creditor instead. Upon appeal to this court, we held to the contrary. Thereafter the same question was presented to the federal Supreme Court (Rocca v. Thompson, 223 U. S. 317, 32 Sup. Ct. 207, 56 L. Ed. 453), upon review of a judgment of the Supreme Court of California, and the federal court held, as did the surrogate and as the California courts had held, that this provision of the Argentine treaty did not give the right to an Italian consul to be appointed administrator of the estate of a subject of Italy, dying in this country intestate. The Swedish treaty contains this provision:

"In the event of any citizens of either of the two contracting parties dying without will or testament, in the territory of the other contracting party, the consul general, consul, vice consul general, or vice consul of the nation to which the deceased may belong, or, in his absence, the representative of such consul general, consul, vice consul general, or vice consul, shall, so far as the laws of each country will permit, and pending the appointment of an administrator, and until letters of administration have been granted, take charge of the property left by the deceased, for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estate." June 1, 1910, art. 14, 37 Stat. 1487.

Under that provision the surrogate held in this case that the Italian consul was entitled to letters of administration. In the Rocca Case, supra, Mr. Justice Day quotes this provision and pointedly calls attention to it as evincing an intention to commit the administration of assets of citizens of one country, dying in the other, exclusively to the consul of the foreign nation. It is true, as counsel for the appellant contends, that what was there said was by way of argument and illustration and not the decision. However, it was not a mere inadvertent

remark but was evidently made after mature consideration and is entitled to great weight, as that court is the final authority upon that question. This declaration of the federal Supreme Court has been quite generally followed by the surrogates of this state. Among others, the following cases may be cited: Matter of Baglieri (Sur.) 137 N. Y. Supp. 175; Matter of Lombardi, 78 Misc. Rep. 689, 138 N. Y. Supp. 1007; Matter of Riccardo, 79 Misc. Rep. 371, 140 N. Y. Supp. 606; Matter of Madaloni, 79 Misc. Rep. 653, 141 N. Y. Supp. 323. The Supreme Court of the state of Minnesota in a well-considered opinion has held to the contrary. Lis' Estate, 120 Minn. 122, 139 N. W. 300.

I do not deem it necessary to enter into an extended discussion of the question. We reached the conclusion in the Scutella Case, supra, that, even under the provisions of the Argentine treaty, the Italian consul was entitled to letters of administration; and while that view is not sustained by the decision of the federal Supreme Court in the Rocca Case, supra, I think the plain reading of the provision of the Swedish treaty respecting the right of the consul to be appointed administrator, fortified by what was said in the Rocca Case, leads to the conclusion that the surrogate was right in appointing the Italian consul.

[2] As regards the interesting question so well and elaborately discussed in the brief of appellant's counsel that, even if the provisions of the Swedish treaty are susceptible to the construction contended for on behalf of the respondent, it would be in excess of the treaty making power of the federal government and an invasion of the rights of the states, it is sufficient to say that that question was considered in the Scutella Case, and it was held that the treaty was supreme. The question, however, seems to have been left open by the federal Supreme Court in its decision in the Rocca Case. I think we should adhere to our decision in the Scutella Case upon that question, as well as upon the effect of the most favored nation clause in the Italian treaty.

If the brother had been pecuniarily interested in this estate, a different question might be presented. What we decide in this case is this: That where an Italian subject dies in this state intestate, leaving a widow and child residents and subjects of Italy, who succeed to his personal estate, the Italian consul is entitled to letters of administration in preference to the brother of the deceased, who has no pecuniary interest in the estate.

[3] As regards the point that the consul has not given the bond required by section 2664 of the Code, it would seem that, if he is to act as administrator, he should give the bond as required by the statute. The mere fact that the persons entitled to share in the estate are subjects and residents of his country and government, I think, does not relieve him from the statutory obligation. There may be claims against the estate. At all events, it seems to me that, if he is to act under appointment by our courts, he should comply with the requirements of the statute under which he is appointed. It may be that the appellant is not in a position to raise the question, since he has no pecuniary interest in the estate, but, in any event, I think the letters should not be

revoked without giving an opportunity to comply with the statute in that respect.

The decree of the surrogate should be affirmed, but under the circumstances without costs. All concur.