[No. 19951.   Department Two.   July 8, 1926.]

*In the Matter of the Estate of* MILTIADIS CHAOUSSIS,
*Deceased.*

C. D. LILIOPOULOS, *as Consul of Greece, Appellant,* v.
ALBERT GRUNBAUM *et al., Respondents.*[1]

[1] EXECUTORS AND ADMINISTRATORS (8)—RIGHT TO APPOINTMENT
—AS BETWEEN CREDITORS AND FOREIGN CONSUL.   The favored
nation clause of our treaty with Sweden providing that a foreign
consul shall be entitled to appointment as administrator of the
estate of an alien, dying here without known heirs or a will,
so far as the laws of each country will permit, does not confer
the right to such an appointment in this state, in view of Rem.
Comp. Stat., § 1431, providing the order and priority of right
in the husband or wife, next of kin, or creditors of the deceased;
since the law of this state does not "permit" the appointment
of a foreign consul.

Appeal from an order of the superior court for King
county, Stern, J., entered February 9, 1926, appointing
an administrator, after a hearing upon conflicting ap-
plications.   Affirmed.

*Carkeek, McDonald, Harris & Coryell,* for appellant.
*Clay Allen,* for respondent.

MACKINTOSH, J.—Miltiadis Chaoussis, a Greek sub-
ject, died intestate in this state.   Application for ad-
ministration was made by respondent Grunbaum as a
creditor of the estate, and by the appellant as consul
of Greece for the district of the northwest.

[1]   The question is whether the creditor has a pref-
erence right to appointment, as general administrator,
over the consul of a foreign country, claiming the right
of administration under treaty provisions.   In the
treaty between the United States and Greece, in article
XI, it is provided that, when any Greek subject dies in

[1]Reported in 247 Pac. 732.

the United States without known heirs and without will, the Greek consular officer shall have "the same rights and privileges as those accorded in the United States of America . . . to the consular officer of the most favored nation." Under the most° favored nation clause, the treaty between the United States and Sweden, of date March 20, 1911, is the one to which reference must be made for the determination of the rights of the consul of Greece in this proceeding. Article XIV of the treaty of this country with Sweden is in the following language:

"In the event of any citizen of either of the two contracting parties dying without will or testament, in the territory of the other contracting party, the consul-general, consul, vice-consul-general, or vice-consul of the nation to which the deceased may belong, or, in his absence, the representative of such consul-general, consul, vice-consul-general, or vice-consul, shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and moreover, have the right to be appointed as administrator of such estate."

In the state of California, an Italian consul sought to be appointed administrator of an estate in preference to the public administrator provided for by the laws of California. At that time the treaty between this country and Sweden had not been made and, under the most favored nation clause contained in the treaty between Italy and the United States, recourse was had to the treaty with the Argentine Republic, which contained the provision most favorable to the appointment of a foreign consul as administrator. The supreme court of the United States in *Rocca v. Thompson*, 223 U. S. 317, decided that, under that treaty, the Italian consul had no right to appointment superior to the

right of the California public administrator. After the decision of the California court, which was being reviewed by the supreme court in its opinion in *Rocca v. Thompson, supra,* the treaty between Sweden and the United States was made, and while that treaty had no application to the controversy then before the court, it was referred to in the opinion, which was written in 1912, and the court called attention to the difference between the Argentine treaty and the Swedish treaty and said that, had the Argentine treaty been worded as was the Swedish treaty, the intention would have been manifest "to permit the administration of estates of citizens of one country, dying in another, exclusively to the consul of the foreign country," and that that was the purpose of the Swedish treaty. This was mere dictum. The interpretation of the Swedish treaty was not before the court, no analysis of that treaty was made, and nothing beyond the foregoing quotation was said by the court on the subject.

Section 61, ch. 156, of the Laws of 1917, p. 656 [Rem. Comp. Stat., § 1431], provides:

"Administration of the estate of the person dying intestate shall be granted to some one or more of the persons hereinafter mentioned, and they shall be respectively entitled in the following order:

"1. The surviving husband or wife, or such person as he or she may request to have appointed.

"2. The next of kin in the following order: 1, child or children; 2, father or mother; 3, brothers or sisters; 4, grandchildren.

"3. One or more of the principal creditors."

Based upon the dictum of the supreme court of the United States, the appellant claims that he has a right prior and superior to the right of everyone mentioned in the quoted section of our law. This same claim by consuls of other countries, in whose treaties with this

16—139 WASH.

country there stands a favored nation clause, has been made, and reliance placed upon the Swedish treaty. And, wherever the question has arisen in the state courts, to be squarely decided, the courts have all held that article XIV of the Swedish treaty gives no preference right to foreign consuls to be appointed as general administrators of the estates of their countrymen dying in this country. They have all held that the phrase, "so far as the laws of each country will permit," refers not only to special administration, but refers to, and modifies, the last clause in the article referring to general administration. This was held by the supreme court of Minnesota in *Austro-Hungarian Consul v. Westphal,* 120 Minn. 122, 139 N. W. 300; by the court of appeals of New York in *In re D'Adamo's Estate,* 212 N. Y. 214, 106 N. E. 81; and by the supreme court of Ohio in *Pagano v. Cerri,* 93 Ohio St. 345, 112 N. E. 1037; and in each one of those cases reference is made to the statement of the supreme court of the United States in the *Rocca* case, and each of these courts held that that statement was purely *obiter dictum* and refused to follow it.

This treaty seems not to have been under consideration, except in these three cases. Each one of these opinions is interesting, extensive and convincing, goes exhaustively into the historical, logical and legal questions involved, and the argument advanced in support of the position taken is unanswerable. In view of these authorities, it is hardly necessary to attempt to elaborate upon the reasons, which are fully set forth in each one of these opinions in a more attractive and comprehensive way than we feel we would be able to develop them.

Based upon these authorities, the superior court was correct in holding that the consul of Greece had no

preference right to appointment as administrator of this estate, that the right which was created for him by reason of the treaty was a right which was subject to the rights given under § 61, ch. 156, Laws of 1917, p. 656, and that, so far as the laws of each country will permit, the right of the consul to appointment as administrator is subordinate to the right of the surviving husband or wife or such person as may be designated, the next of kin, and creditors.

An assignment of error is made on the ground that there is no evidence that the respondent is a creditor of the estate. No elaborate argument is made upon this point, and we find that there is no substantial merit in the assignment.

The judgment is therefore affirmed.

TOLMAN, C. J., PARKER, ASKREN, and MITCHELL, JJ., concur.