[S. F. No. 6911. Department Two.—February 9, 1915.]

In the Matter of the Estate of JOHN SERVAS, Deceased. RICHARD D. FONTANA, Appellant, v. M. J. HYNES, Public Administrator of the City and County of San Francisco, Respondent.

ESTATES OF DECEASED PERSONS—RIGHTS TO LETTERS OF ADMINISTRATION —PROVISION OF TREATY WITH SWEDEN—CONSULAR OFFICERS HAVE NOT PARAMOUNT RIGHT.—Section 14 of the treaty of March 20, 1911, between the United States and Sweden, providing that "in the event of any citizen of either of the two contracting parties dying without will or testament, in the territory of the other contracting party, the Consul-General, Consul, Vice-Consul-General, or the Vice Consul of the nation of which the deceased may belong . . . shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estates," cannot be construed as conferring upon the consular officers of the Swedish government an exclusive and paramount right to letters of administration on the estates of subjects of that country dying intestate in the United States, and consequently, does not confer such exclusive and paramount right, with respect to the estates of subjects of the kingdom of Greece dying intestate in the United States, upon the consular officers of the kingdom of Greece, by reason of the application of the "most favored nation" clause found in article XI of the treaty of November 19, 1902, between the United States and the kingdom of Greece.

ID.—CONSTRUCTION OF TREATY PROVISIONS—RESTRICTION ON RIGHTS OF CONSULAR OFFICERS — RIGHT TO ADMINISTRATION CONTROLLED BY STATE LAWS.—The clause in such treaty with Sweden, "as far as the laws of each country will permit," has but one meaning, as far as the language refers to this country, and means according to the laws of the particular state in the Union within whose jurisdiction the Swedish national may have died. Properly construed, such phrase has reference to the entire subject of administration as mentioned in the paragraph and qualifies not only the right given to a consular officer to take possession temporarily of the estate of a deceased national pending the grant of general letters of administration, but also the right itself to a grant of such letters.

ID.—WHEN CONSULAR OFFICERS ENTITLED TO ADMINISTRATION.—Under the laws of this state, in the absence of next of kin entitled to inherit, the public administrator is entitled to letters of administration, and the Greek consul would only be entitled to administer by

virtue of the treaty provision in the absence of an application for letters by the next of kin or the public administrator, and then only as a person "legally competent" within the meaning of subdivision 10 of section 1365 of the Code of Civil Procedure. This is the only right intended to be conferred by the treaty provision; such a right as our law of administration permits and not a right contrary to it.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting letters of administration on the estate of a deceased person.   J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

W. B. Clark, and S. T. Hogevoll, and Ambrose Gherini, *Amicus Curiae,* for Appellant.

Cullinan & Hickey, for Respondent.

LORIGAN, J.—The deceased, John Servas, a subject of the kingdom of Greece, died intestate in the city and county of San Francisco on December 2, 1913, leaving estate in said city and county. His next of kin reside in Greece. Two applications for letters of administration on his estate were filed in the probate department of the superior court of the city and county of San Francisco, one by the appellant Richard D. Fontana, as consul of Greece at said city and county and other places, the other by the respondent, M. J. Hynes, as public administrator. The superior court held that the public administrator was entitled to letters of administration and the Greek consul appeals from the order.

The only question presented on this appeal is: Does the treaty between the United States and the kingdom of Greece give the appellant, Richard D. Fontana, as consul of Greece, a right paramount to that of all persons, including the public administrator, to letters of administration upon the estate of a subject of Greece dying intestate in this state? The Greek consul contends that it does. He does not rely on any express provision of the treaty between the United States and the kingdom of Greece giving this right but upon a provision of the treaty between the United States and Sweden and the application of the "most favored nation" clause found in the treaty with Greece.

Article XI of the treaty of November 19, 1902, [33 Stats. 2129], between the United States and the kingdom of

CLXIX Cal.—16

Greece provides that "In all that relates to the administration and settlement of estates, the consular officers of the high contracting parties shall have the same rights and privileges as those accorded in the United States of America and Greece respectively, to the consular officers of the most favored nation." .

Section 14 of the treaty of March 20, 1911, [37 Stats. 1487], between the United States and Sweden reads: "In the event of any citizen of either of two contracting parties dying without will or testament, in the territory of the other contracting party, the Consul-General, Consul, Vice-Consul-General, or the Vice-Consul of the nation of which the deceased may belong, or, in his absence, the representative of such Consul-General, Consul, Vice-Consul-General, or Vice-Consul, shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estate."

The claim of appellant is that under the provisions of the treaty with Sweden the consular officers of that government are given an exclusive and paramount right to letters of administration on the estates of subjects of that country dying intestate in the United States and that under the "most favored nation" clause in the treaty with Greece he, as consul of that kingdom, is entitled to the same right to administration in similar cases as is granted to consuls of Sweden.

It may be said in approaching the consideration of this clause as was said in *Estate of Ghio,* 157 Cal. 552, [137 Am. St. Rep. 145, 37 L. R. A. (N. S.) 549, 108 Pac. 516], which involved an interpretation of the provisions of a treaty between the United States and the Argentine Republic granting to consuls the right to "intervene . . . in the administration" of the estates of their deceased nationals "conformably with the laws of the country," that "The question presented would directly affect the right of administration upon the estates of all citizens of all the above-named countries residing in this state, of whom there is doubtless a large number. It is also of grave importance because its solution if in favor of the appellant necessarily ascribes to the federal government the intent, by means of its treaty-making power, to materially

abridge the autonomy of the several states and to interfere with and direct the state tribunals in proceedings affecting private property within their jurisdictions.   It is obvious that such intent is not to be lightly imputed to the federal government, and that it cannot be allowed to exist except where the language used in a treaty plainly expresses it, or necessarily implies it.''

It is to be observed also that while in the present case the claim of the consul of Greece under the provision of the treaty with Sweden is against the public administrator, still if the interpretation which the consul insists shall be given to the language of the treaty is sound, he is not only entitled to letters of administration in preference to the public administrator, but has an absolute paramount right to them as against the resident heirs or next of kin—the resident widow or children—of the deceased.   To give the treaty provision the interpretation the Greek consul contends for is to ascribe to the federal government the intention not only to interfere with the generally accorded right of the states to provide for the distribution of estates of persons dying within their jurisdiction but also to interfere in a manner at variance with the generally recognized right of the resident kindred of a deceased to preference in the administration of his estate, and an interpretation which effects such a result should only follow when the language of the provision clearly requires it. It is a vexed question whether power resides in the federal government by treaty or otherwise to abridge the rights of the states over the administration of estates of persons dying and leaving property within their territorial jurisdiction; whether exclusive jurisdiction over that subject is not a right reserved to the states with which the federal government may not interfere.   We mention this, not that we consider the question of such power involved here, but to point out that in the absence of any determination of that question by the supreme court of the United States it has been the declared policy of the federal government not to interfere by treaty with the laws of the states in the matter of the administration of estates of deceased persons.   Mr. James G. Blaine, as secretary of state, writing to Mr. Abbott in 1890 (For. Rel. of the U. S., 1890, p. 255) relative to a provision of the treaty of 1850 between our government and New Granada (now the United States of Colombia), which provided that consuls of the contracting

parties might take possession of and sell the property of residents of their nation who might die in the country where the consul resides, said: "The only exception to the exercise of this power is found in the provision that 'consuls shall not discharge this function in those states whose peculiar legislation may not allow it.' The reason and effect of these provisions are clear. In the United States, just as was formerly the case in Colombia, legislative power in respect to the settlement of estates is vested in the several states. It has always been controverted whether the exercise of this power could constitutionally be controlled by the government of the United States, either by law or treaty. In order to meet this difficulty it was provided by the present treaty that consuls should not exercise the function of settling estates in states where 'peculiar legislation' might not allow it. The term 'peculiar legislation' means simply legislation of particular political divisions of the country possessing legislative power with respect to the subject-matter. The term 'those states' was also obviously employed in reference to the same political divisions, and could not have been used in reference to the contracting governments." Mr. Bayard when secretary of state in answer to the proposition that consuls of the United States and of Brazil respectively be conceded the privilege of taking out letters of administration in certain cases, declared in 1889, "Each state, under our system, has exclusive jurisdiction over the administration of property of persons, whether foreigners or citizens, dying within its limits."

Mr. Uhl, acting secretary of state, in response to a note from the Italian ambassador proposing that the consuls of Italy in the United States be authorized to settle the estates of subjects of Italy dying in this country, wrote in 1894: "In reply I beg to say that the United States has never entered into any treaty granting to the consuls of foreign countries in this country such authority as that you suggest should be given to the consuls of Italy. The entire question of the administration, settlement, and distribution of decedents' estates in this country is under the control of the respective states. . . . These considerations compel me, though with much regret, to dissent from the opinion entertained by you that the Italian consuls should by international agreement be given the authority you demand for them."

The power of our consuls to take charge of the effects of American citizens dying abroad in their jurisdiction is confined to the case "where the laws of the country permit." (U. S. Comp. Stats., 1901, sec. 1709, 2 Fed. Stats. Ann. p. 797.)

So that in determining whether the language used·in the treaty with Sweden does express a clear intent to grant an exclusive and paramount right of administration to consular officials of the estates of their deceased nationals this declared policy of the federal government must be considered as an element in the solution of the question.

It will be noted on reading the language of the treaty provision with Sweden here involved that it deals with dual rights to be exercised by a consular officer respecting the estate of his deceased national; it refers first to a right on his part to take charge of the property of said deceased pending the appointment of an administrator of his estate and until letters of administration are granted; and, secondly, provides that such consular officer shall have the right to be appointed as administrator of the estate. All this language in the paragraph is preceded by the words "as far as the laws of each country will permit." This language "as far as the laws of each country will permit" can have but one meaning as far as the language refers to this country,—namely, according to the laws of that particular state in the union within whose jurisdiction the national may have died. There is no federal law for the administration of estates of decedents and necessarily the language used means as the laws of the several states will permit. Between the phrase referred to by Secretary Blaine "consuls shall not discharge these functions in those states where peculiar legislation does not allow it" found in the treaty with Colombia, the phrase "conformably with the laws of the country" in the treaty with the Argentine Republic involved in the *Estate of Ghio,* 157 Cal. 552, [137 Am. St. Rep. 145, 37 L. R. A. (N. S.) 549, 108 Pac. 516], and the phrase "as far as the laws of each country will permit," in the treaty with Sweden, there is no substantial difference. The construction given by our court to the phrase "laws of the country" in the Argentine treaty in the Ghio case applies to the same phrase in the treaty provision here under consideration: " . . . whatever right was given, it was intended to be a right which should conform to the laws of the country, and that, in

view of the well-known complex form of our government, the phrase 'laws of the country,' so far as the United States is concerned, means the local laws of administration and procedure of the respective states. If the right asserted is necessarily contrary to those laws, it cannot be said to conform to them.''

The real question here presented, however, is, not so much as to the meaning of the term ''as far as the laws of each country will permit,'' because unquestionably that phrase refers to the laws of the states, but how that language is to be applied as employed in the paragraph of the treaty. The contention of the Greek consul is that the words ''as far as the laws of each country will permit'' as it immediately precedes that portion of the paragraph granting consular officials the right to take temporary possession of the effects of a deceased national until letters of administration have been granted, qualifies only that right; that it has no reference to the last portion of the paragraph; is not a qualification thereof, and that by that portion the ''right to be appointed administrator'' is given to such consular officers as an absolute paramount right whether the laws of the state permit it or not. On the other hand in behalf of the public administrator the claim is that the term ''as far as the laws of each country will permit'' qualifies the entire paragraph and affects all rights respecting administration conferred therein on consular officers.

We cannot adopt the construction urged on behalf of the Greek consul. According to that construction, while the treaty provision would not authorize the consul to take temporary charge of the property of his deceased national or be appointed special administrator of his estate unless the laws of the state would permit it, still that whether the laws of the state permit it or not, he is under the same provision given an exclusive and paramount right to be appointed administrator. We perceive no warrant for the distinction. The entire paragraph deals with the right to the custody and charge of the estates of their deceased nationals by consuls, preliminary to general administration and general administration itself. The whole matter of administrative right is embraced in a single paragraph. Certainly no valid reason can be assigned why the federal government should have declared an intention only partially to interfere with the laws of the states respecting administration. Why an absolute paramount right to general administration should be conferred on the consul, any-

thing in the state law to the contrary notwithstanding, but that as to matters ancillary to such general administration— taking charge of the property or special administration—he should not have an absolute right but only such as the laws of the state would permit.  Naturally the paragraph would be expected to deal with the whole subject of administration, and the same right granted as to all branches of it whether special or general.  We are satisfied that it does; that the phrase "as far as the laws of each country will permit" has reference to the entire subject of administration as mentioned in the paragraph and qualifies not only the right given to a consular officer to take possession temporarily of the estate of a deceased national pending the grant of general letters of administration, but also the right itself to a grant of such letters.  Taking into consideration the settled policy of the federal government as expressed by its secretaries of state not to interfere with the states in the administration of estates within their jurisdiction and our own consular regulations on the subject, we think it would be an unwarranted and strained construction to put upon the treaty provision to hold that the language "as far as the laws of each country will permit" used in the paragraph of the treaty applies only to the temporary possession which a foreign consul may take and does not qualify the right to be appointed administrator found in the last section in the same paragraph.  In our opinion it qualifies both rights.

This same treaty provision with Sweden was before the supreme court of Minnesota for construction in the case of *Austro-Hungarian Consul* v. *Westphal,* 120 Minn. 122, [139 N. W. 300] .  In that case the right to letters of administration of the estate of a subject of Austria who had died in Minnesota was claimed by the Austro-Hungarian consul, his claim being based on the same provision of the treaty with Sweden involved here.  There the court construed the provision adversely to the right claimed by the consul.  In considering the language "as far as the laws of each country will  permit" it was said:

"Grammatically it may well be contended that this qualifying clause applied only to the clause with which it is immediately coupled, thus leaving the right to administration without qualification.  In view, however, of the presumption so aptly referred to by Mr. Justice Shaw in *Estate of Ghio,* 157 Cal. 552, [137 Am. St. Rep. 145, 37 L. R. A. (N. S.) 549, 108

Pac. 516], against any intention on the part of the federal government to invade, by treaty, the province of state law, in a matter so inherently local, as distinguished from national, and likewise from a consideration of the subject-matter and the provisions of this whole article, and especially the latter part, we have concluded that the right to appointment as administrator is conferred by such article upon the expressed condition that it can be claimed only 'as far as the laws of each country will permit.' It would certainly seem strange that the right to temporary possession and control until appointment of an administrator should thus be qualified, and the right to be appointed administrator be given in unqualified terms. The former is often no less important than the latter. Likewise, we cannot think, in the absence of clearly expressed intention so to do, that the federal government intended to take the matter of administration of the estate of foreigners entirely out of the control of the states."

This is the only decision of a court of final jurisdiction directly involving a consideration of this provision of the treaty with Sweden which has been called to our attention.

In support of the claim of the Greek consul reliance is placed on some decisions of surrogates' courts in the state of New York and the language used by Mr. Justice Day of the supreme court of the United States in the case of *Rocca* v. *Thompson*, 223 U. S. 317, [56 L. Ed. 453, 32 Sup. Ct. Rep. 207]. This last case was before the said supreme court on a writ of error to this court to review our decision in the Ghio case heretofore referred to. The treaty with Sweden was not involved in the Rocca or Ghio cases. It was only the treaty with the Argentine Republic and involved solely the right of a consul to letters of administration on the estate of his deceased national under the provisions therein giving him the right to "intervene . . . in the administration" of the estates of his deceased nationals "conformably to the laws of the country." In pointing out that the Argentine treaty in conferring the right to "intervene" did not confer the right to administration Mr. Justice Day it is true did say that if it had been the intention under the Argentine treaty to confer the administration of estates of citizens of one country dying in another exclusively to the consul of the foreign nation it would have been very easy to declare that purpose in unmistakable terms, and then, by way of illustration, referred to the provision in

the treaty with Sweden under consideration here.   But as we have said the treaty with Sweden was not under consideration or involved in the Rocca or Ghio cases.   The provision in that treaty was simply referred to by Mr. Justice Day as matter of comparison.   No discussion or independent reasoning was applied by him in his opinion in the Rocca case to the language ''as far as the laws of each country will permit'' found in the treaty with Sweden and his language respecting the latter treaty was mere *dictum*.   Undoubtedly, the provision in the treaty with Sweden does confer the right on a consul to letters of administration on the estates of his deceased nationals. It so expressly provides.   But we cannot agree that it confers upon him any exclusive right to administration.   Under the laws of this state, in the absence of next of kin entitled to inherit, the public administrator is entitled to letters of administration and the Greek consul would only be entitled to administer by virtue of the treaty provision in the absence of an application for letters by the next of kin or the public administrator, and then only ''as a person legally competent'' within the meaning of subdivision 10 of section 1365 of the Code of Civil Procedure of this state.   This is the only right which we think is intended to be conferred by the treaty provision; such a right as our law of administration permits and not a right contrary to it.   A careful consideration of the particular provision satisfies us that this is the proper construction to be given to it notwithstanding that a contrary view may be expressed in the *dictum* in the Rocca case.   This language of Mr. Justice Day was relied on in the Minnesota case quoted above and that court said of it ''In the Rocca case (*supra*) Mr. Justice Day seems to refer to the treaty with Sweden as expressly and clearly giving Swedish consuls an absolute right in the premises; but at most this was a mere *dictum* and we cannot follow it without question.''

As far as the decisions of the surrogate courts of New York are concerned it is not necessary to cite or discuss them. They are not decisions of courts of last resort and prior to the Rocca decision these courts were not in entire harmony.   In none of them prior to the decision in the Rocca case was the provision in the treaty with Sweden involved.   Subsequent to the decision in the Rocca case this treaty provision with Sweden was invoked in the surrogate courts but in none of the decisions therein was any independent reasoning indulged in

with reference to the terms of the treaty nor any discussion of the meaning of the language "as far as the laws of each country will permit." They simply refer to the Rocca case and sustain the right of the consul to administer on the authority of the language used by Mr. Justice Day in referring to the provision in the treaty with Sweden. Some of these surrogates' decisions were rendered subsequent to the decision in the Minnesota case but no reference is made to it.

In the case of *Holmberg's Estate*, 193 Fed. 260, all that was held was that the consul of Sweden under this treaty provision was eligible to appointment as administrator under subdivision 10 of section 1365 of the Code of Civil Procedure heretofore referred to, and, hence, entitled under the federal law to have delivered to him the effects of a deceased national. The proceeding in that case was *ex parte* and involved no question of whether the consul was entitled to an exclusive and paramount right to administration.

Under these views the order appealed from appointing the public administrator was correctly made by the superior court and is affirmed.

Melvin, J., and Henshaw, J., concurred.