In the Matter of the Estate of ABRAHAM L. ERLANGER, Deceased.*

Surrogate's Court, New York County, April 23, 1930.

* Affd., 229 App. Div. 778.

*Isidor J. Kresel,* for the proponents.

*Max D. Steuer,* for the claimant, contestant.

*Aaron Lipper,* for certain legatees and beneficiaries.

FOLEY, S. This is an application by one of the proponents of the will of the decedent for the appointment of a temporary adminis-·trator of the estate. In the supporting affidavits and the reply affidavits the moving party requests the appointment of one of the persons named as executor in the will. The claimant, who contends that she was the common-law wife of the deceased, appears in the application, joins in the general request for the appointment of a temporary administrator, but opposes the appointment of the person nominated by the proponents and demands that she and a disinterested person be appointed by the surrogate.

The status of a temporary administrator is similar in nature to that of a receiver. He holds and conserves the assets of an estate until the ultimate issuance of permanent letters. Primarily, the surrogate must determine whether there is any emergency requiring temporary administration. If necessity be established, the selection of the person or persons to act in the temporary capacity is within the discretion of the surrogate. Certain rules, however, have been uniformly followed by the surrogates in the exercise of this discretion. In an ordinary case, consideration is first given to the persons selected by the maker of the will as executors of his estate. In some instances representatives of the proponent and the contestant have been appointed either upon consent of the parties or by direction of the surrogate. In very exceptional cases, an impartial or neutral person is selected to act either alone or with the nominees of the parties. But in each case the particular facts of the estate must govern the selection.

After the most careful consideration of the various affidavits filed I have decided, under the special circumstances of this estate, to appoint as temporary administrator Mr. Baron, one of the persons named as executor in the will. All of the blood relatives, next of

kin and legatees named in the will offered for probate, with the exception of one legatee in a small amount who is absent from this country, join in the request for his appointment. Mr. Baron stipulates, by a written instrument, that if appointed he will act without compensation as temporary administrator. With but few exceptions, and those in extraordinary cases, it has been the practice of the surrogates to pay heed to the selection by the maker of a will of the persons he desires to manage his estate. That practice is based upon sound public policy, since it encourages and fosters confidence in our court by the living. It assures them that outsiders will not be permitted, even temporarily, to manage their estates, whether large or small. Such was the custom of my predecessor, Mr. Surrogate FOWLER, and such, I understand, to be the rule followed by the learned surrogate of Kings county, Surrogate WINGATE. In aid of economy, certain provisions of the Surrogate's Court Act encourage that practice, for, under the terms of section 285 of the Surrogate's Court Act where a person acts as temporary administrator and subsequently as executor, he is entitled to one commission only for acting in both capacities. He must elect in which capacity he requests commissions. Thereby substantial expense is saved to the beneficiaries of the estate if the will be admitted. In view of the waiver by Mr. Baron of any commissions whatsoever as temporary administrator, if the will should be denied probate, his appointment will involve no expense for that purpose to the estate.

There is an additional important consideration in this case. Mr. Baron is not only named as one of the executors by Mr. Erlanger in the will offered for probate, dated October 18, 1927, but he is likewise named as one of the executors in a second will previously made and dated February 14, 1923. He was also selected and named as one of the executors by Mr. Erlanger in a third prior will of May 2, 1922. The 1922 will was not drawn by Mr. Baron, but by Mr. Nathan D. Stern, Mr. Erlanger's attorney at that time. These three wills, covering a period of over eight years, present practically the same testamentary plan of distribution by the testator. With the exception of certain changes in legacies of small amounts, the residuary estate is given, under each instrument, to the brother and two sisters of the testator.

The relationship of the claimant here, unlike that of the usual contestant of a will, is disputed. It will thus be seen that the claimant must not only establish her status as the common-law wife, but. if she is successful upon that issue, these three wills must be successively set aside as invalid before complete intestacy is reached and letters of administration will issue. If any one of the instru-

ments be admitted to probate, letters will issue to Mr. Baron as one of the executors chosen by Mr. Erlanger. Certain contentions are made by the alleged widow which indicate a claim that a valid common-law marriage was entered into by the claimant and the decedent after the date of the will offered for probate. If that determination be ultimately made, the validity of that part of the will which nominated the executors would not be affected. The revocation is only partial. The will must still be successfully attacked as invalid by reason of defective execution, lack of testamentary capacity, undue influence or fraud. In other words, under the provisions of section 35 of the Decedent Estate Law (since the amendment of 1919),* where a marriage of a testator takes place after the execution of a will, unless provision is made in the will for the widow, she is entitled to her intestate share, but the remaining terms of the will, including the appointment of the executors, otherwise remain effective. (*Matter of Gaffken*, 197 App. Div. 257; affd., 233 N. Y. 688.)

The claimant's principal objection to the selection of Mr. Baron as temporary administrator is founded upon her charge that he exercised undue influence upon the testator in the drafting of the will offered for probate here. She also stresses his personal hostility to her. In my opinion, and in view of the special circumstances of this case, these considerations do not constitute a disqualification. (*Matter of Hilton*, 29 Misc. 532; Jessup-Redfield Surrogate's Courts [6th ed.], p. 743; *Matter of Robert*, N. Y. L. J. Jan. 9, 1912; *Matter of Ashmore*, 48 Misc. 312.) He receives no legacy under the will. He is an attorney of long experience and his professional standing is attested by several affiants. In addition to the fact that he was selected by Mr. Erlanger as executor in three of the wills, it appears from several affidavits that he was for a long period of time intimately associated with Mr. Erlanger. This association not only involved a personal friendship, but also the relationship of Mr. Baron as lawyer and Mr. Erlanger as client. It involved also knowledge of Mr. Erlanger's financial transactions, and in addition, a close business contact with Mr. Erlanger's various enterprises. Mr. Baron was an officer or director of over thirty corporations through which Mr. Erlanger's various activities were conducted. He held powers of attorney from him in the last years of Mr. Erlanger's life. He is qualified, therefore, by this experience to safeguard the estate as temporary administrator.

. If a mere charge of undue influence in the procurement of a will can eliminate the person named as executor from appointment as temporary administrator, a very simple and effective method of

---

* See Laws of 1919, chap. 293.— [Rep.

disqualification would result. . A simple charge of undue influence or fraud in the general form of objections usually filed to the probate of a will would be sufficient. In my opinion some other ground of unfitness must be established. In *Matter of Hilton* (29 Misc. 532) Surrogate FITZGERALD of this court pointed out that the rule that a charge of undue influence disqualifies was not absolute and inflexible so as to admit of no exception to its application. There, as here, the estate was claimed to be of some magnitude, but its character and condition and the complicated nature of its affairs and business were circumstances to be considered in the appointment by the surrogate of the person chosen by the testator, because of an intimate knowledge of his affairs. The allegations there respecting the charges of undue influence were characterized by the surrogate as general, remotely inferential or conjectural and they were wholly denied by the person named as executor. In the present proceeding the charges of the claimant are likewise denied.

In *Matter of Shonts* (109 Misc. 276; affd., 229 N. Y. 374). Mr. Surrogate FOWLER vacated the appointment of the widow as temporary administrator because of her misrepresentation as to an existing will. Her status, as widow, unlike that of the claimant here, was undisputed. She was the contestant in the proceeding. He appointed one of the persons named as executor in the will. He pointed out that it had been his established practice, so far as possible, to select for temporary administrators in all contested proceedings the executors named in the will. His reasons for that policy were stated to be economy to the parties and a practice " more consonant with the dignity of a court of this character." His decision was subsequently affirmed by the Court of Appeals (*Matter of Shonts*, 229 N. Y. 374).

The disputed status of the claimant and the fact that she has not yet established her position as the common-law wife of the decedent are sufficient reasons for the denial of her own application for appointment. In an ordinary probate proceeding, to encourage the appointment of the contestant as temporary administrator would inevitably lead to an increased number of contested wills. In a large estate, the commissions, alone, of the contestant, as temporary administrator, would be sufficient inducement to file objections to a will regardless of the merits of the contest.

Under the special circumstances of this case I am likewise of the opinion that no neutral person of the court's own selection should be appointed. Exceptional or extraordinary circumstances occur in cases where that procedure is not only desirable, but necessary. Thus, where a claim is made that the will has been

forged and the preliminary proofs tend to support that conclusion, or where a stranger to the blood or family of the deceased has in a will written himself down as a beneficiary of a large part of the estate, the appointment of a person named as an executor would be obviously improper. Other extraordinary cases have justified the selection by a surrogate of an impartial representative. But they are not present in this case. " The intrusion of nominees of the court, strangers to the dead, very distasteful to the inhabitants of this State, should be as rare as possible in this court, if people of property are to continue to feel at ease and in security in this State." (FOWLER, S., in *Matter of Shonts, supra.*)

The courts have always respected the right which a testator enjoys to determine who is most suitable to settle his testamentary affairs, and his solemn selection should not lightly be disregarded. After the admission of a will to probate, the courts will not name a better executor for the testator nor disqualify, by a judicial veto, the widow or friend or other person selected in the will, except upon strict proof of the statutory grounds of incompetency. (*Matter of Leland*, 219 N. Y. 387, 393.) For the foregoing reasons the person selected by the testator in three successive wills will be appointed.

If the claimant desires any specific documents which may be material or competent, the Civil Practice Act and the Surrogate's Court Act furnish legal and orderly methods of obtaining them from the temporary administrator.

A bond sufficiently adequate to protect the estate and the possible interests of the claimant will be required of the appointee. The amount thereof will be fixed upon the settlement of the order granting the application.

Submit order on notice accordingly.