**LELY, Acting Consul, v. KALINOGLU.**

**No. 6306.**

United States Court of Appeals for the District of Columbia.

Argued Feb. 15, 1935.

Decided March 4, 1935.

George C. Vournas and W. Cameron Burton, both of Washington, D. C., and Hugh Reid, of Clarendon, Va., for appellant.

George C. Gertman, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

GRONER, Associate Justice.

George Kalinoglu was a Greek alien. For some time prior to December 24, 1933, he had resided in the city of Washington and had conducted here a restaurant business. On December 24 he was killed in an automobile accident and left surviving him a widow, a father, a mother, two brothers, and two sisters, all subjects of Greece residing in Greece, except one brother, appellee, who was a naturalized citizen of the United States residing here.

George Kalinoglu died intestate, leaving personal estate consisting principally of money to his credit in a local bank.

At the time of his death, his brother (appellee) was temporarily in Greece visiting his parents. Upon receiving information of the death of George, he returned home, arriving in Washington between the 15th of February and the 1st of March following. In the meantime, appellant, as the acting consul of Greece in the District of Columbia, had filed a petition in the probate court asking to be appointed administrator of the estate. On January 26, without notice, he was appointed such administrator, and on February 20 letters of administration were issued to him. Subsequently appellee filed his petition in the proceedings asserting his right, under the probate laws of the District of Columbia, to be appointed administrator of his brother's estate, and praying that an order should pass revoking the appointment of appellant. Appellant answered, setting up the Consular Convention between the United States and Greece (33 Stat. 2122) in

support of his right to appointment as administrator, and on this issue the lower court held that the Treaty between the United States and Greece did not have the effect of displacing the prior rights of administration conferred upon appellee by the laws of the District; and, finding that the order appointing the consul had been improvidently entered, the letters were revoked and appellee appointed administrator of his brother's estate. This appeal followed.

The question depends upon the extent of the right of consuls of the most favored nation to administer the estates of their deceased nationals. We have held that the effect of the "most-favored nation" clause in the Greek Consular Convention included the pertinent provisions of the Treaty with Sweden (37 Stat. 1479). Diamantopoulos v. Glekas, 56 App. D. C. 151, 11 F.(2d) 200. The provisions of that treaty relied upon are as follows: "In the event of any citizens of either of the two Contracting Parties dying without will or testament, in the territory of the other Contracting Party, the consul-general, consul, vice-consul-general, or vice-consul of the nation to which the deceased may belong, or, in his absence, the representative of such consul-general, consul, vice-consul-general or vice-consul, shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estate."

■ Under the District of Columbia laws, a surviving brother has a preferential right of administration if there be neither widow, nor child, nor grandchild, nor father or mother. Here those preferred by the statute ahead of appellee are nonresident aliens, and therefore incapable. D. C. Code 1929, T. 29, § 107.

■ Appellee's position is that nothing in the Treaty with Greece supersedes the prior rights of administration conferred upon him by the local law.

Appellant insists that the treaty by express terms confers a paramount right of administration upon him as consul.

In a number of early cases, involving similar controversies, there was conflict of opinion whether the treaty-making power could constitutionally supplant or qualify state laws regulating the administration of estates, but that question seems now to be foreclosed by the opinion of the Supreme Court in Santovincenzo v. Egan, 284 U. S. 30, at page 40, 52 S. Ct. 81, 84, 76 L. Ed. 151, where the Chief Justice says: "The treaty-making power is broad enough to cover all subjects that properly pertain to our foreign relations, and agreement with respect to the rights and privileges of citizens of the United States in foreign countries, and of the nationals of such countries within the United States, and the disposition of the property of aliens dying within the territory of the respective parties, is within the scope of that power, and any conflicting law of the state must yield."

In that aspect, nothing remains but to determine whether the Convention with Sweden, properly construed, confers upon the representatives of that government exclusive rights.

The question is not new. It was carefully considered by the highest courts of the states of Minnesota, Washington, Ohio, California, Maryland, and New York, and answered unqualifiedly in the negative.[1] In the New York case, the opinion of the court was prepared by Judge Cardozo. It is full and interesting, and, in the view we take, as convincing as it is exhaustive. Since, as we think, it is impossible to add anything to it, we adopt its reasoning and conclusion as our own. In his discussion of the treaty provisions, Judge Cardozo considered the matter not only from the viewpoint of the language used, but in the light of international usage in relation to the functions of consuls, and also in the light of our diplomatic history as the result of our dual form of government, and by suitable illustrations indicates the consequences which would follow the supplanting of our local laws if the rights asserted be granted. He construes the words of the treaty, "so far as the laws of each country will permit," to indicate the intention to make the treaty provisions subordinate to local laws in relation to administration. And the other words, "and, moreover, have the right to be appointed as ad-

[1] Austro-Hungarian Consul v. Westphal, 120 Minn. 122, 139 N. W. 300; In re Chaoussis's Estate, 139 Wash. 479, 247 P. 732; Pagano v. Cerri, 93 Ohio St. 345, 112 N. E. 1037, L. R. A. 1917A, 486; In re Servas' Estate, 169 Cal. 240, 146 P. 651, Ann. Cas. 1916D, 233; Chryssikos v. Demarco, 134 Md. 533, 107 A. 358, 362; Matter of D'Adamo, 212 N. Y. 214, 106 N. E. 81, 84, L. R. A. 1915D, 373.

ministrator of such estate," to be qualified by those just previously quoted. The two provisions, taken together, he concludes, mean that the consul is not merely to have the right of temporary intervention, but is, moreover, to have the right, in case of the failure or disqualification of those preferred by statute, to be appointed administrator. This seems to us the correct understanding of the treaty, and is the view taken by the Court of Appeals of Maryland in the Chryssikos case cited in the footnote; and indeed by all the courts in the cases which we have examined, for all reach the conclusion that the words "so far as the laws of each country will permit" refer not only to special administration, but as well to the last clause in the treaty article providing for general administration.

Any other view, we think, would be clearly inadmissible either from the standpoint of right or necessity.

Suppose, for instance, a case of an alien domiciled in the United States who, while domiciled here, acquires an estate, marries, and has children. Could it be reasonably thought that, on the death of the father intestate, their rights to administration would be obliged to yield to the right of a foreign consul? In that case the latter would not be acting in behalf of his national, but administering property of citizens of this country. A construction that will bring to pass such consequences ought not to be considered, except by a plainer manifestation of the will of the national government than is afforded by the language relied upon.

Indeed, it is fair to think that the right here insisted on never would have been pressed except for some expressions of the Supreme Court in Rocca v. Thompson, 223 U. S. 317, 32 S. Ct. 207, 56 L. Ed. 453. There Mr. Justice Day, in denying the claim of the Italian consul, who relied on the provisions of the Argentine Treaty of 1853 (10 Stat. 1009), to precedence over the public administrator of California, cited on the other hand the provisions of the Convention with Sweden (those which are pressed here) as illustrating, contrary to the terms of the treaty then being considered, the purpose of Congress by that convention to commit the administration of estates of citizens of one country dying in another exclusively to the consul of that nation. But these remarks of Justice Day, as Judge Cardozo correctly points out, are plainly obiter; and that this is true is recognized in the opinions of the other courts which discuss the effect of that decision. And that also is our view, and in that view we think it apparent the treaty with Sweden may be construed as we have indicated, without danger of coming in conflict with the decision of the Supreme Court in the Rocca case or lessening the force and reasoning of the opinion on the question then before the Supreme Court. And so we conclude, without more, that the function of the consul is primarily to guard the property of his countrymen who may die in the United States from loss or waste; that this power is inherent in his office; that it is confirmed by the treaty; and that this by its terms also extends the power so as to permit the consul to be appointed administrator where there is no qualified person, relative, or creditor within the jurisdiction to whom the local law gives primarily the right of administration.

Affirmed.