EVANS *v.* CANO DEL CASTILLO, ADMINISTRATOR.

4-9733                                         247 S. W. 2d 947

Opinion delivered April 7, 1952.

Rehearing denied May 5, 1952.

*Daggett & Daggett* and *John T. Williams,* for appellant.

*Melvin H. Hawks, Ike R. Clinton* and *A. M. Coates,* for appellee.

ED. F. McFADDIN, Justice. The question here presented is the power of the St. Francis Probate Court to appoint the Mexican Consul (appellee) as administrator of the Estate of Rogelio Mejia, a Mexican National.

On October 8, 1951, appellee, A. Cano del Castillo (hereinafter referred to as "Mexican Consul"), filed in the St. Francis Probate Court, his petition, alleging that Rogelio Mejia, a National (Citizen) of Mexico, died intestate in, and a resident of, St. Francis County, Arkansas, on October 8, 1949, survived by his father, brother and sister, all non-residents of Arkansas; that appellee, A. Cano del Castillo, residing in Memphis, Tennessee, was the Consul of the Government of Mexico, for the States of Arkansas, Tennessee, and a portion of Mississippi; and that letters of administration should be granted to the said Mexican Consul because "the decedent died possessed only of a cause of action arising out of his wrongful death." The St. Francis Probate Court, on October 8, 1951, granted the prayer of the petition and entered an order appointing the Mexican Consul as such administrator, who then promptly filed, in the U. S. District Court for the Eastern District of Arkansas, an action against Grady Trainor, seeking to recover damages for the alleged wrongful death of Rogelio Mejia.

It will be observed that two years intervened after the death of Mejia, before the Mexican Consul sought to be appointed administrator. In that interval, no one—creditor or other person—had sought letters of administration on the estate of Mejia. But as soon as the Mexi-

can Consul was appointed administrator and filed the suit against Trainor, events began to happen in rapid order. (a) On October 13, 1951, Grady Trainor (the person sued for Mejia's wrongful death) . asserted a claim against the estate of Mejia for $160 for funeral expenses; (b) Dr. R. H. Evans asserted a claim for $5.00 for medical services rendered the deceased on the day of his death; (c) Mann Wacaster asserted a claim on open account for $12.40; (d) B. McCollum, Jr., asserted a claim on open account for $22.23. These four creditors (the appellants here), on October 13, 1951, filed in the St. Francis Probate Court, their joint ''Motion to Revoke Letters of Administration,'' in which they alleged that the Mexican Consul could not be administrator, since he was a non-resident of Arkansas.

The motion was heard by the St. Francis Probate Court on stipulated facts; and the Court entered an order refusing to revoke the appointment of the Mexican Consul as administrator. From such order refusing revocation, there is this appeal.

I. *Appealability.* Though not discussed in the briefs, we think it not inappropriate to mention the question of whether the order is appealable. In § 62-2016 of the Cumulative Pocket Supplement of the Ark. Stats., there is found § 16 of Act 140 of 1949, which Act is known as the ''Probate Code.'' So much of said section as is germane to the question here, reads:

''a. *Appeal to Supreme Court Permitted.* Except as provided in subsection b hereof, a person aggrieved by an order of the Probate Court, in proceedings under the provisions of this Code, may obtain a review of the same by the Supreme Court.

''b. *Orders Which Are Not Appealable.* There shall be no appeal from an order removing a fiduciary for failure to give a new bond or to render an account as required by the court, nor from an order appointing a special administrator.''

Under the foregoing language, any order of the Probate Court is appealable, except the two mentioned in subdivi-

sion "b" above, one of which is "an order appointing a special administrator." This will be further discussed.

II. *Legality of Appointment of the Mexican Consul as Administrator.* Appellants argue that under our Probate Code (particularly as now found in § 62-2201, Ark. Stats.), a non-resident of Arkansas cannot be appointed administrator of the estate of a deceased intestate under any circumstances. Appellee contends to the contrary. Also appellee claims that under its treaty powers, the United States Government has agreed with Mexico that the Mexican Consul could be appointed administrator in a case like the one at bar.[1] Furthermore, appellee argues that in the said treaty, the United States agreed with Mexico to accord to Mexico the same treatment that the United States accorded the most favored nation;[2] and that under the treaty proclaimed March 20, 1911, between the United States and Sweden, the United States agreed that a Swedish Consul could be appointed administrator in a case like the one at bar;[3] and that the Mexican Consul is entitled to be appointed administrator in this case because of the Swedish Treaty, and the "most favored nation" clause.

---

[1] The Treaty between the United States and Mexico, proclaimed July 16, 1943, provides in Article I, paragraph 2, regarding consuls: "As official agents, such officers shall be entitled to the high consideration of all officials, national or local, with whom they have official intercourse in the State which receives them." The said Treaty also provides in Article VIII, § 2, "Such consular officer shall have the right to be appointed as administrator within the discretion of a court or other agency controlling the administration of estates, provided the laws of the place where the estate is administered so permit."

[2] The "most favored nation" clause is well understood in International Law. See Moore's Digest of International Law, Volume V, page 257; and Hyde on International Law, Volume II, page 73. See, also, 34 C. J. S. 1345, where there is a discussion of the clause as regards Consuls being appointed administrators.

[3] The said treaty between the United States and Sweden (as quoted in the brief), provides in Article XIV: "In the event of any citizens of either of the two Contracting Parties dying without will or testament, in the territory of the other Contracting Party, the consul-general, consul, vice-consul-general, or vice-consul of the nation to which the deceased may belong, . . . shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estate."

We have been favored with excellent briefs by both sides; and cases from many jurisdictions are cited, a few of them being: *In Re Estate of D'Adamo, Deceased,* 212 N. Y. 214, 106 N. E. 81, L. R. A. 1915D, 373; *Rocca* v. *Thompson,* 223 U. S. 317, 56 L. Ed. 453, 32 S. Ct. 207; *Estate of Servas Fontana* v. *Hynes,* 169 Cal. 240, 146 Pac. 651, Ann. Cas. 1916D, 233; *Pagano, Admr., etc.* v. *Cerri, Italian Consular Agent in and for Northern Ohio,* 93 Ohio St. 345, 112 N. E. 1037, L. R. A. 1917A, 486; *Lely, Acting Consul* v. *Kalinoglu,* 64 App. D. C. 213, 76 F. 2d 983, 100 A. L. R. 1523; *In Re Chaoussis' Estate (Liliopoulos, Consul of Greece* v. *Grunbaum, et al.),* 139 Wash. 479, 247 Pac. 732; and *Schneider* v. *Hawkins, et al.,* 179 Md. 21, 16 A. 2d 961.

But under the view we take of this case, it is unnecessary to decide the points so splendidly briefed and argued, because we believe that § 79 of the said Probate Code Act 140 of 1949 (as now found in § 62-2210 of the Cumulative Pocket Supplement of the Arkansas Statutes), settles all practical questions here presented. That section concerns special administrators, and reads:

"*Special Administrators.* For good cause shown a special administrator may be appointed pending the appointment of an executor or a general administrator or after the appointment of an executor or general administrator; with or without the removal of the executor or general administrator. A special administrator may be appointed without notice or upon such notice as the court may direct. The appointment may be for a specified time, to perform duties respecting specific property, or to perform particular acts, as stated in the order of appointment. The special administrator shall make such reports as the court shall direct, and shall account to the court upon the termination of his authority. Otherwise, and except where the provisions of this Code by their terms apply only to general personal representatives, and except as ordered by the court, the law and procedure relating to personal representatives shall apply to special administrators. The order appointing a special administrator shall not be appealable."

In the petition to be appointed administrator of the estate of Rogelio Mejia, the Mexican Consul stated that the only asset of the estate of the deceased was a claim for wrongful death. It is stipulated that an action for such alleged wrongful death has been filed against Grady Trainor who is one of the appellants. So in effect what the St. Francis Probate Court did, in its order of October 8, 1951, was to appoint the Mexican Consul as special administrator in order that he might bring such action before it became barred by limitations. Even though the order of appointment did not use the words "special administrator," such was the effect of the appointment under the facts in this case. And the order refusing to vacate the appointment had the same effect as if the St. Francis Probate Court, after hearing the objections, then continued the appointment of the Mexican Consul, as such special administrator. After the Mexican Consul has completed the litigation for the alleged wrongful death of Rogelio Mejia, then it will be determined whether there are any assets of the estate of Rogelio Mejia. If there be such assets, then the creditors herein may ask for a general administrator, or renew their efforts to have one appointed. If the suit of the Mexican Consul is unsuccessful, then the creditors herein will probably not be interested in having a general administrator.

It might have been argued that a special administrator must have the same qualifications as a general administrator, and that if the general administrator had to be a resident of Arkansas, then likewise, the special administrator would have to be such a resident. But we think our Statute (§ 62-2210 as previously quoted), as well as the adjudications generally, are to the contrary. A special administrator need not have the qualifications of a general administrator. Our Statute says:

" . . . except as ordered by the court, the law and procedure relating to personal representatives shall apply to special administrators."

This quoted language clearly indicates that the Court may appoint a special administrator who does not possess the qualifications of a general administrator.

The New York Court discussed this point in the case of *In Re Plath Estate,* 56 Hun, 223, 9 N. Y. Supp. 251. In that case, the various persons seeking to be appointed administrator had antagonistic interests, and so the Court appointed a temporary administrator who did not possess the statutory qualifications. The point was raised by appeal, and Judge BARTLETT held that the temporary administrator (same as special administrator in this case) did not have to possess the qualifications of a general administrator. He said of the Surrogate (Probate Court in this case):

"He is not limited in making his selection to persons entitled to ordinary administration under the statute. To hold that he was would be to introduce into the law a limitation and restriction which is not expressed in the language of the Code, or to be implied therefrom. It is important that the person intrusted with temporary administration should be not only competent and honest, but disinterested; and if he had to be either a relative or a creditor of the deceased it might often be very difficult to select a temporary administrator who should (would) be indifferent, as between the parties, to a contest among applicants for permanent administration, or a contest over the probate of a will. It seems to us clear that the surrogate had the power to make the appointment which is attacked in this case, and there is nothing before us to indicate that his discretion was not fairly and wisely exercised."

Cases to the same effect are *In Re Erlanger's Estate,* 136 Misc. 793, 242 N. Y. Supp. 249; *In Re Burnham's Will,* 114 Misc. 455, 186 N. Y. Supp. 520. In 21 Am. Jur. 833, in discussing the appointment of a special administrator, the text states the general rule:

"The statutory provisions as to the prior rights of certain persons to the appointment of an administrator do not apply to the selection of special or temporary

administrators . . . Accordingly the court has general discretion as to the selection of the appointee."

Similarly, in 34 C. J. S. 1301, in speaking of special administrators, the text states:

"In the absence of a statute, the selection of a temporary or special administrator is not limited to those entitled to ordinary administration, but rests in the discretion of the Court."

Under the facts and circumstances in this case, it is clear that the St. Francis Probate Court did not abuse its discretion in appointing the Mexican Consul as special administrator of the estate of Rogelio Mejia.

We therefore conclude that, in the light of the facts stipulated in this case,. the effect of the order of the St. Francis Probate Court was to appoint the Mexican Consul as special administrator for the purpose of bringing the suit that he has brought; and that suit, according to the record before us, is now pending, and nothing herein modifies or limits the authority of the Mexican Consul to have brought, and to continue to maintain, that suit.

Since the effect of the order of the St. Francis Probate Court was to appoint the Mexican Consul as special administrator, and since he can certainly serve as such, it follows, under the plain wording of our Statute, § 62-2210, that the order appointing the Mexican Consul as special administrator, is not subject to appeal. Therefore, the appeal is dismissed.

The Chief Justice not participating.

WARD, J., dissenting. The majority opinion, in holding that the Consul of Mexico may be appointed special administrator, has reached a conclusion which, to my mind, is based on neither logic or law.

To begin with, the plain language of the Probate Code makes the Consul ineligible for such appointment. Omitting the portions that have no bearing, the Code [Ark. Stats., § 62-2201, b, 6] reads as follows: "No person is qualified to serve as domiciliary personal repre-

sentative who is . . . a non-resident of this state
. . ."

The Consul, of course, is not a resident of this State.

But, say the majority, the court has the right to appoint a non-resident as a special administrator under the authority of § 79 of the Code [Ark. Stats., § 62-2210] which they set out in full. In my opinion the majority is wrong and for the following reasons:

1. The lower court did not appoint the Consul a special administrator but did appoint him as a regular administrator, and I cannot understand how this court can, or should want to, impose its judgment upon the lower court.

2. The above mentioned section does not give the court a right to appoint a non-resident as a special, or any other kind of, administrator. In all events a special administrator is still an administrator and we have just seen that a non-resident cannot be appointed administrator.

3. Since § 62-2210 does not provide for a non-resident to be a special administrator the majority must resort to saying the language implies it. They rely on the next to the last sentence in the section and, particularly, on the words ''and except as ordered by the court.'' This interpretation is not justified. From my limited knowledge of the English language the only fair interpretation that can reasonably be placed on the sentence referred to is; after the special administrator has been appointed [who must be a resident] the same law and procedure [applicable to regular administrators] must apply [such as giving bond, kind of bond, and time and manner of making reports] to him as to a regular administrator ''except as ordered by the court.'' The wisdom of such ''exception'' in the Code is readily discernible. A special administrator is ordinarily appointed for a short time and for a specific purpose and the ordinary procedure governing his reports would not be applicable.

4. The majority seek to justify their interpretation of § 62-2210 by the opinion in *Re Plath Estate* from

which they quote extensively. However a careful examination of this opinion reveals that it not only does not support their contention but to the contrary. There the question of a non-resident was not involved or mentioned, but the court did say, in effect, there was a discretion of choice [between eligible residents] so long as it did not conflict with the Code. Here the appointment of the Consul [a non-resident] does conflict with our Code. The other cited cases are of the same character.

5. There is as much, and I submit more, reason why a special administrator should be a resident than there is why a regular administrator should be, because, as stated in the *Burnham* case cited in the majority opinion, a special administrator represents the court and acts directly under the court's direction. For that reason, it appears to me, a special administrator should at all times be within the jurisdiction of the court, readily available for direction and guidance. Certainly the Consul of Mexico would not be thus available.