## (July 10, 1958)

■ In the Matter of the Probate of the Will of JULIAN A. GAUL, Deceased. F. LEIGH ENDERLIN et al., Appellants; CONSTANCE MCMAHON et al., Respondents.— Appeal by the petitioners in a probate proceeding from an order of the Surrogate's Court of Delaware County which appointed as temporary administrator a bank not named in the will. The petitioners are the executors named in the propounded will, one of them being an individual and the other a bank, and contend that proper exercise of the Surrogate's discretion required the appointment of the latter as temporary administrator. That such would be the usual course may not be doubted. As stated by Surrogate FOLEY: "With but few exceptions, and those in extraordinary cases, it has been the practice of the surrogates to pay heed to the selection by the maker of a will of the persons he desires to manage his estate. That practice is based upon sound public policy, since it encourages and fosters confidence in our court by the living. * * * In aid of economy, certain provisions of the Surrogate's Court Act encourage that practice, for, under the terms of section 285 of the Surrogate's Court Act where a person acts as temporary administrator and subsequently as executor, he is entitled to one commission only for acting in both capacities." (*Matter of Erlanger,* 136 Misc. 793, 795, affd. 229 App. Div. 778.) In firm language, Surrogate FOWLER expressed his conviction that the " intrusion of nominees of the court, strangers to the dead * * * should be as rare as possible " and only " where the executor is shown to have drafted the disputed will and takes a benefit therefrom, or where he is shown to be a

person of doubtful solvency or character, or where he is charged under oath with undue influence or with fraud in the procurement of the will itself." (*Matter of Shonts*, 109 Misc. 276, 286, revd. 191 App. Div. 427, revd. 229 N. Y. 374.) Surrogate WITMER was also "heartily in accord with the view held by many surrogates that in the absence of valid objections to the nominated executor, he should be named temporary administrator." (*Matter of Ranney*, 78 N. Y. S. 2d 602, 605, affd. 273 App. Div. 1057.) Stripped of nonessentials and arguments of little substance, respondents' case resolves into their contention that the named executor is a creditor of the estate to the amount of $300,000 for which it holds, as collateral, securities worth over $1,300,000. The securities are listed and well-known stocks and bonds. Respondents' suggestion that the securities were or may be sacrificed in the interest of a "speedy payment of the indebtedness" seems somewhat unrealistic and, in any event, is unsupported by any evidence or inference therefrom. Further, it would seem to be unlikely that decedent, as pledgor, did not, in accordance with usual banking practices, confer upon the bank a right of immediate sale no less summary and complete than that which the bank might possess as administrator, but again evidence is absent. Respondents complain, also, of an order granted by the Surrogate, without notice to them or other potential contestants of the will, authorizing the sale of securities (resulting in reduction of the note and of the collateral to the amounts above stated) but again there is no evidence as to the terms of the hypothecation agreement and hence as to the real necessity of such order, assuming it may have been improperly granted. In any case, it is difficult to perceive in this transaction some action or attitude inimical to the estate. A creditor is not disqualified from appointment as administrator and such appointments are, in fact, contemplated and authorized by the statute. (Surrogate's Ct. Act, §§ 119, 126, 133.) In *Metropolitan Trust Co.* v. *Stallo* (166 App. Div. 639), despite charges of self-dealing and derelictions of duty having no counterpart here, the court, in an action for an accounting, stayed the prosecution of a Surrogate's Court proceeding for the removal of an administrator, commenting (p. 644) : "The mere fact that plaintiff was at one and the same time administrator of the estate and a creditor thereof is not alone a legal objection to its acting as administrator. It was a creditor when it was appointed, and very probably was selected as administrator for that very reason. At all events there is no inconsistency in the two relations." The papers before us indicate no substantial reason for the Surrogate to depart from the usual and long-recognized practice and to decline to appoint one or the other of the named executors. Neither the decision nor the order assigns any reason for the determination. No evidence was taken, however, and we remit to afford the parties an opportunity to develop proof, if either be so advised. The authorities cited by respondents by no means mandate the result at which the Surrogate arrived. In *Matter of Pearson* (228 App. Div. 418), upon which respondents rely as stating the rule in this department, we recognized, as we do here, the discretionary nature of the order appealed from and we affirmed for reasons stated, including our conclusion that the individual appointed was "peculiarly fitted" to supervise valuable real property in the estate. Here there is no comparable situation nor is there any satisfactory proof that the corporate executor named is "not disinterested" or that its officers are "partisan". We noted that the named executor was a party to the will contest, but in most of the cases where temporary administration has been committed to a named executor, the existence of such a contest occasioned the appointment. A further question requires discussion. It appeared upon the

argument that the temporary administrator, a corporate fiduciary, has retained as its attorney in connection with the administration of the estate, the attorney for certain potential contestants; the attorney being, also, the Surrogate of the county in which the fiduciary's office is located and in which it is presumably authorized to exercise trust powers in respect to estates administered in the Surrogate's Court. While another fiduciary might have displayed a different sense of the fitness of such a selection, there was no legal inhibition against the retainer. One result, however, is to pose the question whether the presumed purpose of the appointment of a stranger as temporary administrator has been frustrated or in some part defeated by this needless action on the part of the fiduciary. Upon remission, this question will have to be considered by the court below in weighing the considerations favoring one appointment or another. The respondents strenuously assert their lack of confidence in the impartiality of the executor named by decedent. That the impartiality of a representative owing its selection solely to the court may be suspect, in the eyes of the parties or of the public, gives rise to concern even more grave. Order reversed, on the law and the facts and in the exercise of discretion, with $10 costs, and matter remitted to the Surrogate's Court for further proceedings not inconsistent herewith. Bergan, J. P., Coon, Gibson, Herlihy and Reynolds, JJ., concur.